HARDY, Judge.
This is a case which requires the adjudication of a conflict between the holder of a chattel mortgage on a 1954 Plymouth automobile, plaintiff in suit, and the third opponent who claims title by purhase of the vehicle. Plaintiff appeals from judgment in favor of third opponent in the principal sum of $1,700, together with the additional sum of $200 as attorney’s fees. Third opponent-appellee has answered the appeal, alleging failure of citation or service of the petition or motion o'f appeal and praying the amendment of the judgment to the extent of allowing legal interest on the amount thereof from date of judicial demand until paid.
The facts in the instant case are without dispute and the case is submitted by joint motion of counsel on the facts as stipulated and certain pertinent exhibits attached thereto.
We set forth the pertinent facts as revealed by the stipulation of counsel as follows:
In the early part of October, 1953, the Chrysler Corporation shipped to its dealer, Hugh Roberson Motors, Inc., of Alexandria, Louisiana, four new 1954 model Plymouth automobiles, among them being a 1954 Savoy Club Sedan, Motor No. P25-9032, which is the vehicle involved in this suit. Under the terms of an existing financing agreement Commercial Securities Company, Inc., was obliged to honor drafts of the Chrysler Corporation for the dealer’s cost of all automobiles sold and shipped to Hugh Roberson Motors, Inc. On or about Saturday, October 10, 1953, Commercial Securities Company was notified by an officer of the Guaranty Bank & Trust Company of Alexandria that the said bank held for collection drafts of the Chrysler Corporation in the total amount of $7,318.59 covering the dealer’s cost on the four Plymouth automobiles. The drafts were paid to the bank by Commercial Securities Company on October 13, 1953 and at the time Commercial Securities prepared a note and chattel mortgage, of the type generally *593 known as a “floor plan” mortgage, in the principal amount of $1,648.96 covering the new Plymouth automobile above described. The mortgage was actually executed by Hugh Roberson, on behalf of Hugh Roberson Motors, Inc., at or about 9:00 o’clock, A. M., October 15, 1953. On the same date the mortgage was mailed to the Commissioner of Vehicles in Baton Rouge and was filed and entered by the Commissioner in the Register of Floor Plan Mortgages at 2:46 P. M., October 16, 1953.
On the morning of October 15, 1953, at some time prior to 11:00 o’clock, one Dua J. Miller, acting as agent of Benoit Motor Company, the Chrysler-Plymouth dealer located in the Town of Welch, Louisiana, delivered to Hugh Roberson Motors, Inc., at its place of business in Alexandria, check of the Benoit Motor Company in the amount of $1,652.81 in full payment of the purchase price of the above described Plymouth Sedan, which vehicle was then delivered by Hugh Roberson Motors to Miller, together with a car invoice of Hugh Roberson Motors. Following this transaction the automobile in question was driven by another employee of Benoit Motor Company to Welch, where it was placed in the showroom of said company at or about 12:00 noon October 15, 1953. The check of Benoit Motor Company which was given in payment for the purchase price of the Plymouth automobile, and which is filed as an exhibit in the record, evidences that it was endorsed by Hugh Roberson Motors “for collection” ; was delivered to Guaranty Bank & Trust Company of Alexandria on October 20, 1953 and was paid by the drawee bank October 22, 1953. These facts obviously form the basis for contention of plaintiff’s counsel that the purchase by Benoit Motors was not actually perfected until after the sale to Chaisson. While this conclusion appears to be justified by logical deduction from the above stated facts, it cannot be accepted, inasmuch as the relationship of these facts to the issues of the instant case were not established by the stipulation of counsel.
On October 20, 1953 the automobile was sold and delivered by Benoit Motor Company for a total consideration of $2,524.55 to Eldridge Chaisson. On the same date Chaisson purchased a 1953 Louisiana license plate for the automobile and made application to the Motor Vehicle Division of the Department of Revenue at Baton Rouge, Louisiana, for issuance of certificate of title.
On November 23, 1953, Commercial Securities Company, Inc., obtained judgment against Hugh Roberson Motors, Inc., and Hugh Roberson, individually and in solido, in the sum of $1,648.96, recognizing the lien and privilege on the Plymouth automobile described and ordering the issuance of writs of fieri facias and the seizure and sale of said automobile to satisfy the amount of judgment.
Writ of fieri facias issued on November 25, 1953 out of the Ninth Judicial District Court in and for the Parish of Rapides, directed to the Sheriff of the Parish of Jefferson Davis, ordering said sheriff, by seizure and sale of the described automobile, to make up the amount of the judgment, with interest, attorney’s fees, etc.
The described automobile was seized by the Sheriff of Jefferson Davis Parish on November 27, 1953, in the possession of Eldridge Chaisson, and on December 8, 1953 the said Chaisson filed an affidavit of ownership of the described vehicle, which was followed on December 17, 1953 by the filing of a petition of third opposition.
On December 18, 1953 Commercial Securities Company posted a bond in the principal sum of $5,000 with the Sheriff of Jefferson Davis Parish, and on December 19th the described automobile was appraised in the amount of $2,250.00 and sold to Commercial Securities Company at public auction for the sum of $1,500.
Commercial Securities Company, Inc., as defendant in the proceedings of third opposition, filed answer to the merits thereof on January 19, 1954. Azenor Buller, Sheriff of Jefferson Davis Parish, after filing exceptions of no right and no cause of action to the petition of opposition on January 19, 1954, thereafter filed answer to *594 the merits of the opposition on February 24th, reserving all rights under his exception.
The only remaining material facts essential to the consideration of the question presented appear to be that the form provided by the Commissioner of Vehicles for use in connection with transfers between dealers, designated as Revenue Form VEH-17, was not executed by Hugh Roberson Motors, Inc., at the time of the transfer of the automobile to Benoit Motor Company on October 15, 1953, and that on November 4, 1953, Commercial Securities Company and the Associate Discount Corporation of Lake Charles, through which latter company third opponent was handling his financing of the automobile, were notified by the Motor Vehicle Division that a floor plan mortgage was recorded against the Plymouth automobile involved, but this information was never conveyed to Chais-son.
The only issue here presented requires a determination of the effect of the entry of the floor plan mortgage as against Chais-son, intervenor and third opponent, under the provisions of the Vehicle Certificate of Title Law, LSA-R.S. 32:701 et seq.
On behalf of third opponent it is contended that he obtained clear and unencumbered title to the Plymouth automobile involved in this proceeding inasmuch as the floor plan chattel mortgage was not filed and entered by the Commissioner of Vehicles until the day following the purchase from and delivery by Hugh Roberson Motors to Benoit Motor Company, third opponent’s vendor.
To the contrary plaintiff contends that Benoit Motor Company obtained an imperfect title to the automobile in question and that the floor plan mortgage was effective against both Benoit Motor Company and Chaisson, its vendee.
After a most thorough consideration and learned discussion of the effect of the Vehicle- Certificate of Title Law our distinguished brother of the district court concluded that the chattel mortgage was not effective against Benoit Motor Company nor Chaisson.
Since the question before us necessitates a thorough examination of the Vehicle Certificate of Title Law, we set out below the provisions of the statute which are particularly appropriate and applicable to the facts of this case, with emphasis which is supplied by the court:
Section 702:
“(1) ‘Person’ shall mean any individual, firm, corporation, partnership or association.
“(2) ‘Dealer5 shall mean any person engaged in the business of buying, selling or exchanging motor vehicles which are subject to license * * *.
“(3) ‘User’ shall mean any person who acquires a vehicle for purposes other than resale and is required to register same * * *
******
“(5) The term ‘floor plan loan' shall mean any loan made to a licensed vehicle dealer and secured by a chattel mortgage on vehicle which constitutes a part of the dealer’s stock in-trade held for sale in the ordinary course of business.”
Section 704:
“The provisions of this Chapter shall apply to the sale and chattel mortgaging of vehicles of the sort and kind required to be registered and licensed * * * except that there is specifically excluded from the provisions of this Chapter the sale of a new vehicle prior to the first sale of such new vehicle to a user, as defined herein. Such exclusion, however, does not exempt from the provisions of this Chapter such first sale made to a user as defined herein.”
Section 705:
“On and after December 15, 1950, no person shall sell a vehicle without delivery to the purchaser thereof, wheth *595 er such purchaser he a dealer or otherwise, a certificate of title issued under this Chapter in the name of the seller with such signed endorsement of sale and assignment thereon as may be necessary to show title in the purchaser; provided
* * * * * *
“(2) A dealer who is reselling a vehicle which he purchased for stock purposes, and for which no certificate of title exists under this Chapter shall, in lieu of applying for and obtaining a certificate of title in his own (the dealer’s) name, and delivering same to the purchaser, note the fact of non-existence and the reasons therefor, including name and address of the party, whether factory, distributor or other person, from whom the vehicle was obtained, on a form to be prescribed and furnished by the commissioner, and deliver said form duly signed to such purchaser at the time of sale.” (Form VEH-17 which was not executed and delivered in this case.)
Section 706:
“On and after December IS, 1950, except as provided in R.S. 32:705 * * * no person buying a vehicle from the owner thereof, whether such owner be a dealer or otherwise, hereafter shall acqtdre a marketable title in or to said vehicle until the purchaser shall have obtained a certificate of title to said vehicle.”
Section 707:
“A. The purchaser must in all cases file an application for certificate of title within five days after the delivery of such vehicle; provided, however, that dealers need not apply for certificate of title for any vehicle acquired for stock purposes, if upon reselling such vehicle the dealer complies with the requirements of R.S. 32:705.”
Section 710:
“ * * * B. In order to affect third persons the chattel mortgage must be by authentic act, or by private act duly authenticated in any manner provided by law, except as to mortgages given by automobile dealers to secure so-called floor plan loans. Every such mortgage other than those securing floor plan loans, shall be effective as against third persons from the date of notation of same by the commissioner on the face of the certificate of title for such vehicle and the same shall be superior in rank to any privilege or preference arising subsequently thereto. Mortgages given by automobile dealers on vehicles for which no certificate of title has been applied for, when such mortgages are given to secure floor plan loans, shall be effective against third persons from the time they are entered by the commissioner, in the register of floor plan mortgages in the office of the commissioner.”
The reasons for passage of Act 342 of 1950 of the Louisiana Vehicle Certificate of Title Act are obvious, as pointed out by the author of an article in Louisiana Law Review, Volume XI, page 450. The general effect of the Act has been to drastically limit and restrict the easy, casual and practically unsupervised transfer of title to motor vehicles which theretofore existed. The result has been that dealing in the buying and selling of motor vehicles has been placed in a class by itself, limited, restricted and governed by the provisions of the legislative enactment.
It is vigorously urged by counsel for third opponent that the transaction of sale and purchase which is involved in the instant case as between Benoit Motor Company and Chaisson, is governed by the provisions of the LSA-Civil Code Articles concerning sales, particularly Articles 1922, 1923, 2441 and 2446. This contention leads to the conclusion that there is a completed sale when the object is delivered and the price is paid. By extension of this conclusion and application to the facts of the case counsel contends that there was a completed sale between Hugh Roberson Motors and Benoit Motor Com *596 pany on October 15, 1953, under which ownership of the vehicle passed to Benoit Motor Company ‘‘free and clear of all rights, claims, liens and pretensions of third persons, not actually and positively known to Benoit Motor Company, a/nd not then recorded according to law.”
We perceive nothing in the statute under examination which detracts from the general force and effect- of the articles of the Civil Code with reference to sales. But it is clear that the effect of these articles insofar as they apply to the sale of motor vehicles has been modified by the statutory provisions.
Examining the facts in relation to the provisions of the Certificate of Title Law, we are convinced that the title procured by Benoit Motor Company was imperfect because the parties thereto did not comply with the provisions of the Act.
Similarly, the title which Chaisson obtained from Benoit Motor Company was imperfect and contingent until certificate of title was duly issued to Chaisson. This is so under the very plain and mandatory requirements of the statute.
Although we have felt it desirable to develop the above stated conclusions, we wish to point out that in the final analysis the question presented here is not primarily one of title but rather the restriction of title by reason of the existence of a mortgage encumbrance in favor of plaintiff. As to the resolution of this proposition, we think there can be no possible question under the plain and unambiguous wording of the statute as found in Section 710, subd. B, above quoted in full, the appropriate portion of which we now reiterate and re-emphasize as follows:

‘‘Mortgages given by automobile dealers on vehicles for which no certificate of title has been applied for, when such mortgages are given to secure floor plan loans, shall be effective against third persons from the time they are entered by the commissioner, in the register of floor plan mortgages in the office of the commissioner.”

Every fact which is essential to bringing into effect the above provision is evident in this case, namely:
A floor plan mortgage on this automobile was given by Hugh Roberson Motors, Inc.
The mortgage was entered by the Commissioner at 2:46 P.M., October 16, 1953.
The mortgage was therefore effective against third persons from and after the date and hour above set forth.
At the time of Chaisson's purchase of the mortgaged car on October 20, 1953, he was certainly a third person within the meaning and intent of the provision, and the previously entered mortgage was therefore effective as against him.
It must be conceded that the Vehicle Certificate of Title Law has effected radical changes in the interpretation and application of the heretofore accepted and enunciated principles of the law of chattel mortgages. But, as we have above pointed out, the changes apply to a specific and particular class of movable property governed by the provisions of this specific legislative enactment. The procedure in connection with the sale and transfer of title to automobiles, the existence and effect of encumbrances thereupon, has been radically altered. Under the Act the source of evidence of title and the existence, vel non, of encumbrances against a particular vehicle has been centralized in the office of the Vehicle Commissioner.
It must be admitted in the instant case that our resolution of the matter appears to work a hardship upon the third opponent, but this feeling is alleviated by knowledge that he has other satisfactory and adequate means of legal recourse in saving himself harmless against loss.
*597 As we have noted early in this opinion third opponent-appellee complained in answer to appeal of failure of citation or service of the petition or motion for appeal. We think his objection on this ground has been waived by his action in filing answer to the appeal, and, in any event, this point has not been urged before this court and is therefore considered to have been abandoned.
For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment in favor of respondent, Commercial Securities Company, Inc., and against third opponent, Eldridge Chaisson, rejecting the demands of said third opponent at his cost.