MOORE, Judge.
The City of Gadsden (“the City”) appeals from a judgment of the Etowah Circuit Court (“the trial court”) awarding worker’s compensation benefits to Lawrence Scott. We reverse.

Relevant Facts

Scott was born on March 25, 1950, and was 59 years old at the time of the trial. According to Scott, he began working as a police officer for the City in November 1976. On or about August 21, 2001, Scott participated in an in-service training exercise involving restraint maneuvers. When a maneuver was performed on Scott by Barry Thomas, Scott’s right wrist made a popping sound. Scott testified that he had joked with Thomas that Thomas had broken Scott’s hand but that Scott had not really thought it was broken, although it did hurt. Scott did not report the injury to the City at that time. Scott stated that he had had some discomfort and swelling from the injury around the time the incident had occurred but that he “got over” that injury and continued to perform his normal work duties for the City.
According to Scott, he began having some pain and discomfort in his right wrist in 2004, and he visited his doctor, Dr. Kenny Smith, regarding the problems he was having with his wrist around that time. Dr. Smith testified in his deposition that, based on his notes, Scott had com *298 plained about his right wrist in April 2004. Dr. Smith stated that, at the April 2004 visit, he had x-rayed Scott’s wrist and had diagnosed Scott with arthritis. Dr. Smith stated that, according to his notes from June 21, 2004, Scott was unable to identify an injury that would account for the pain in his right wrist and that an X-ray revealed that Scott had a space between two bones in his wrist, or a “widening of the scaphoid lunate disk.” Scott testified that, after his wrist became more painful in June 2004, Dr. Smith referred Scott to Dr. William Stewart, an orthopedic surgeon. Scott stated that Dr. Smith had scheduled more than one appointment for him with Dr. Stewart before he actually visited Dr. Stewart for the first time because, Scott stated, he “didn’t want to get cut or anything.”
Dr. Stewart’s notes, dated October 1, 2004, reveal that Scott described the incident that had occurred on August 21, 2001, to Dr. Stewart; that Scott stated to Dr. Stewart that he had “felt something pop and hurt real violently on the dorsal aspect of his right wrist” at that time; that his wrist had “swelled up and bothered him a pretty good bit at the time but it seemed like it calmed down at a later point”; and that “[a]fter that it continued to act up and it has continued to bother him now to a worsening degree.” Dr. Stewart further stated in his October 1, 2004, notes that Scott has “probably got a proximal row carpal instability from an old ligament injury and is no[w] beginning to produce some arthritic changes.” Dr. Stewart’s notes, dated October 15, 2004, reveal that Dr. Stewart determined that Scott had “radial carpal joint proximal row disruption,” “widening of the scaphoid lunate gap on the dorsal view” of his right wrist, and “narrowing of the articular cartilage at the proximal carpal row.” Dr. Stewart’s notes further stated that Scott “has so much swelling on the under surface of the wrist that he is developing a carpal tunnel syndrome .... This would clearly be secondary to the trauma of the original injury.” Dr. Stewart’s notes, dated November 1, 2004, state that Scott “does have a carpal tunnel syndrome which is probably secondary to his pathology of the wrist.”
According to Scott, Dr. Stewart performed an MRI on Scott and informed Scott that he had bones separated in his wrist. Dr. Stewart performed surgery, or a “proximal row fusion with a carpal tunnel release,” on Scott’s right hand/wrist on November 17, 2004; Scott testified that his regular health insurance paid for that surgery. According to Scott, Dr. Stewart operated on the top and the bottom of his hand and put a “spider plate” in his hand. Dr. Stewart performed a second surgery, i.e., a “radial styloidectomy,” on Scott’s right wrist on March 14, 2005. Scott also testified that the spider plate Dr. Stewart had placed in Scott’s hand became loose and that Dr. Victoria Masear, a hand specialist, had performed surgery on his wrist on March 30, 2006, and had removed the screws from that spider plate. Scott testified that he had not been back to visit Dr. Stewart or Dr. Masear in two or three years at the time of trial.
Scott submitted his first report of injury to the City on December 13, 2004. In that report, Scott stated that the injury had occurred on or about August 21, 2001, that his disability began on November 17, 2004, and that he had notified the City on November 24, 2004. Scott testified that, once his claim was reported to the City, someone had telephoned him to investigate the circumstances of the incident and, Scott said, his statement had been recorded. The City submitted a transcription of that statement at trial. Scott began receiving retirement benefits beginning August 1, 2005. Janice Crim, the director of risk management for the City, testified that *299 Scott had received disability retirement. Scott testified, however, that he was eligible for regular retirement because he had worked for the City for over 25 years.
Scott testified that he had not missed a day of work because of his right-hand and wrist problems until November 16, 2004. Scott testified that, by the time of his last day of work in November 2004, he was a Field Sergeant. According to Scott, his duties at that position included arriving to a shift early and assigning beats and completing all the payroll and overtime slips for everybody on that shift. He stated that his job required him to use his right hand repetitively on a daily basis.
An office note dated June 1, 2005, of Dr. Michael K. Morris, a doctor of osteopathic medicine, which was submitted into evidence, stated that Scott had sustained an injury to his wrist; Dr. Morris opined at that time that he was concerned that Scott’s physical limitations cquld place him and his fellow officers in potential danger. Dr. Moms noted further that, in his opinion, Scott could not “perform all the essential job duties expected of him as a police officer.”

Procedural History

Scott filed a complaint against the City and a number of fictitiously named defendants on November 16, 2006, requesting worker’s compensation benefits from the City. The City filed an answer on December 8, 2006, asserting a number of affirmative defenses; specifically, the City asserted, among other things, that the applicable statute of limitations had run; that Scott had failed to comply with the notice requirements of the Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975; and that the City was claiming a setoff pursuant to § 25-5-57(c), Ala.Code 1975. The City filed a motion for a summary judgment on August 21, 2008; that motion was denied on April 1, 2009.
A trial was held on November 10, 2009. On November 17, 2009, the trial court entered an order finding that Scott had “suffered a compensable injury to a scheduled member — his right hand,” overruling the City’s objections based on the statute of limitations and the lack of notice, denying Scott’s claim that he is permanently disabled under the Act, and ordering both parties to submit proposed final judgments within 20 days of the entry of the order. On December 29, 2009, the trial court entered a judgment denying the City’s defense that the statute of limitations had run; denying Scott’s claim that he has a 100% impairment to his right hand; denying Scott’s claim that he was “temporarily totally disabled”; finding that Scott had suffered a cumulative-stress injury to his right hand that had resulted in a 75% impairment to his right hand;[1] ordering that court costs be paid by the City; finding the City responsible for all Scott’s medical, surgical, prescription, vocational, and other expenses in regard to his injury as set out in § 25-5-58, Ala.Code 1975; ordering that Scott’s attorney’s fees amounting to 15% of his recovery be paid in a lump-sum amount; and ordering the City’s attorney to prepare an amended judgment setting out the moneys due Scott and Scott’s attorney.
The trial court entered an amended judgment on January 11, 2010, which *300 awarded Scott $28,050 in lump-sum disability benefits; awarded an attorney’s fee of $4,207.50, payable from Scott’s award; allowed Scott’s attorney to deduct from Scott’s award the reasonable cost of case preparation; and taxed costs as paid. The City filed a motion to alter, amend, or vacate the judgment on January 21, 2010, reasserting its arguments regarding the statute of limitations, notice, and its entitlement to a setoff and asserting that there were no facts recited in the trial court’s judgment supporting the conclusions therein. On February 1, 2010, the trial court entered a second amended judgment that included findings of fact and conclusions of law. In that second amended judgment, the trial court determined, among other things, that
“there is in fact clear and convincing evidence that as a direct and proximate result and consequence of the work that [Scott] performed for the [City] as a police officer, involving the repetitive use of his right hand, [Scott] suffered severe permanent cumulative stress right carpal tunnel injuries, with the last date [Scott] suffered same was on November 16, 2004, that caused him such constant and severe pain that in fact he suffered a 75% loss of the use of his right hand.”
The trial court further determined that Scott should be compensated under § 25-5-57(a)(3)a.l2., Ala.Code 1975, for the total loss of use of his right hand, that Scott was entitled to regular retirement, and, thus, that the City was not entitled to any setoff against Scott’s workers’ compensation benefits. The City filed a postjudgment motion on February 9, 2010; that motion was denied on February 11, 2010. The City filed its notice of appeal to this court on March 10, 2010.

Standard of Review

“Section 25 — 5—81(e), Ala.Code 1975, provides the standard of review in a workers’ compensation case:
“ ‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
“ ‘Our review is restricted to a determination of whether the trial court’s factual findings are supported by substantial evidence. Ala.Code 1975, § 25-5-81(e)(2). This statutorily mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding is not supported by substantial evidence. See Ex parte M & D Mech. Contractors, Inc., 725 So.2d 292 (Ala.1998). A trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995).’
“Landers v. Lowe’s Home Ctrs., Inc., [14] So.3d [144, 151] (Ala.Civ.App.2007). ‘This court’s role is not to reweigh the evidence, but to affirm the judgment of the trial court if its findings are sup *301 ported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom.’ Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 794 (Ala.Civ.App.2002).”
MasterBrand Cabinets, Inc. v. Ruggs, 10 So.3d 13, 16-17 (Ala.Civ.App.2008).

Discussion

The City identifies six issues on appeal: (1) whether Scott’s worker’s compensation claim was barred by the statute of limitations; (2) whether Scott timely notified the City of his injury pursuant to § 25-5-78, Ala.Code 1975; (3) whether the City is entitled to a setoff of the workers’ compensation benefits due Scott in accordance with § 25-5-57(c)(l), Ala.Code 1975; (4) whether the evidence supports a finding of a cumulative-stress injury; (5) whether the evidence supports the trial court’s finding that Scott suffered a 75% loss of use of his right hand; and (6) whether the trial court’s findings of fact are supported by the evidence presented to the trial court.
Because these issues are potentially dispositive of the entire appeal, we will first address the City’s arguments regarding the statute of limitations and notice. In workers’ compensation cases, an injured employee generally has two years from the date of the accident, i.e., the work-related event causing the injury, see, e.g., Jackson v. Delphi Auto. Sys., 42 So.3d 1264, 1265 (Ala.Civ.App.2010), to file a verified complaint seeking compensation. See § 25-5-80, Ala.Code 1975. However, in the case of cumulative-physical-stress injuries, the two-year statutory period commences on the “date of the injury,” id., which has been defined as the “date of the employee’s last exposure to the injurious job stimulation.” Dun & Bradstreet Corp. v. Jones, 678 So.2d 181, 185 (Ala.Civ.App.1996). In this case, the trial court found that Scott had sustained a repetitive-use injury to his hand, with the last on-the-job injurious exposure occurring on November 16, 2004, which would bring the complaint, filed on November 16, 2006, within the statute of limitations for cumulative-stress injuries. The City argues, however, that Scott did not present sufficient evidence to support a claim that his hand injuries resulted from cumulative physical stress. The City further argues that the evidence indicated that the injuries resulted from the training-exercise incident occurring in 2001, making the November 16, 2006, complaint untimely by over three years.
In order to prove that an injury arose from work-related cumulative trauma, an employee must present clear and convincing evidence of legal and medical causation. Valtex, Inc. v. Brown, 897 So.2d 332, 334 (Ala.Civ.App.2004); Safeco Ins. Co. v. Blackmon, 851 So.2d 532, 537 (Ala.Civ.App.2002); and § 25-5-81(c), Ala. Code 1975. “Clear and convincing” evidence is
“evidence that, when weighted against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.”
§ 25-5-81(c), Ala.Code 1975.
“To establish legal causation, the employee must prove that ‘the performance of his or her duties as an employee exposed him or her to a danger or lisk materially in excess of that to which people are normally exposed in their everyday lives.’ Ex parte Trinity Indus.,. Inc., 680 So.2d 262, 267 (Ala.1996). To establish medical causation, the employee must prove that the danger or *302 risk to which the employee was exposed ‘ “was in fact [a] contributing cause of the injury” ’ for which benefits are sought. Id. at 269 (quoting City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729, 782 (Civ.1975)).”
Madix, Inc. v. Champion, 927 So.2d 833, 837 (Ala.Civ.App.2005). On appeal, when an employer challenges a finding that an employee has proven a work-related cumulative-trauma injury, this court reviews the record to determine whether the trial court, based on its weighing of the competing evidence, reasonably could have been clearly convinced that cumulative trauma in the employment legally and medically caused the injury. Ex parte McInish, 47 So.3d 767, 770 (Ala.2008).
After thoroughly reviewing the record, we find that Scott presented insufficient evidence to support a claim that his hand injuries resulted from cumulative trauma on the job. To find legal causation, the trial court would have had to have been clearly convinced from the evidence that the office duties performed by Scott exposed Scott to a danger of incurring the hand injuries he sustained, i.e., a scaphoid lunate injury and carpal tunnel syndrome, which was greater than the risk of such injuries experienced by persons in their everyday lives. Scott testified that his duties as a sergeant in the City of Gadsden Police Department included coming in to a shift early and making all of the assignments and preparing all of the payroll and overtime slips for everybody on that shift. He further testified that his job required him to use his right hand repetitively on a daily basis. However, the record contains no evidence indicating that Scott, by using his hand in the frequency and manner in which he did while working, increased his likelihood of acquiring the injuries for which he sought compensation. To find legal causation, the trial court would have had to surmise that Scott’s job duties legally caused his hand injuries. However, a finding of legal causation cannot be based on mere speculation, conjecture, or surmise. Wal-Mart Stores, Inc. v. Chamless, 737 So.2d 467, 469 (Ala.Civ.App.1999).
Perhaps recognizing the lack of evidence of legal causation, Scott argues that, as a matter of law, carpal tunnel syndrome should be treated as a cumulative-trauma injury. The legislature does characterize carpal tunnel syndrome as a form of cumulative-physical-stress disorder that can result from on-the-job exposure. See 1992 Ala. Acts, Act No. 92-537, § 1. However, in Ex parte USX Corp., 881 So.2d 437, 441-43 (Ala.2003), our supreme court noted that carpal tunnel syndrome can also result from a one-time accident. See Millry Mill Co. v. Manuel, 999 So.2d 508, 512 n. 3 (Ala.Civ.App.2008) (“Carpal tunnel syndrome may also be caused by a onetime acute trauma or accident.”). Our supreme court has held that the particular factual evidence in the record, not any abstract law, dictates whether carpal tunnel syndrome should be classified as an accidental personal injury or a cumulative-physical-stress disorder. Ex parte USX Corp., 881 So.2d at 441-43. Hence, the legislative reference to carpal tunnel syndrome as a type of cumulative-physical-stress disorder did not relieve Scott, in this case, of the burden of proving legal causation.
Because we find no evidence of legal causation, we find no need to discuss medical causation at length. Suffice it to say that Scott presented no evidence indicating that his scaphoid lunate injury resulted from cumulative work-related trauma and that the evidence could not have clearly convinced the trial court that the office duties Scott performed while working for the City caused or contributed to his carpal tunnel syndrome. As the City argues, *303 the evidence indicates that Scott injured his scaphoid lunate in the 2001 training exercise and that that injury caused the constriction of Scott’s carpal tunnel. Scott presented no medical or other evidence to explain how his job duties, in fact, also contributed to the carpal tunnel syndrome.
We also need not delve into any possible ground for finding that Scott timely filed a claim based on the 2001 accident. See American Cyanamid v. Shepherd, 668 So.2d 26, 28 (Ala.Civ.App.1995) (holding that statute of limitations begins to run in latent injury cases when the “ ‘claimant, as a reasonable person, should recognize the nature, seriousness, and compensable character of his injury or disease’ ” (quoting 2B A. Larson, The Law of Workmen’s Compensation § 78.41(a) (1989))). The evidence is undisputed that Scott did not notify the City of his 2001 accident within 90 days of that accident. The last sentence of § 25-5-78, Ala.Code 1975, provides:
“Notwithstanding any other provision of this section, no compensation shall be payable unless written notice is given within 90 days after the occurrence of the accident or, if death results, within 90 days after the death.”
The language used in that sentence is mandatory, and, thus, a failure to provide notice within 90 days extinguishes all claims for compensation, regardless of the reason given by the injured worker for the failure to provide timely notice. See Wal-Mart Stores, Inc. v. Elliott, 650 So.2d 906, 909 (Ala.Civ.App.1994). It is undisputed that Scott did not provide the City notice of the 2001 accident within 90 days of its occurrence. Hence, Scott could not maintain any claim for compensation based on the 2001 accident, even if the claim was not barred by the statute of limitations.
Based on the foregoing, we conclude that the trial court erred in awarding Scott any compensation. Accordingly, we reverse the judgment insofar as it awards Scott permanent-partial-disability benefits, and we remand the case for the trial court to enter a new judgment consistent with this opinion.[2]
REVERSED AND REMANDED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. Although some caselaw has treated injuries to the wrists as causing a loss of, or a loss of use of, an arm, see Carter v. Southern Aluminum Castings, 626 So.2d 636 (Ala.Civ.App.1993), in the present case the trial court ruled that Scott’s wrist injury had caused a 75% loss of use of Scott’s hand. Scott did not appeal that ruling, so we are not asked to determine whether the trial court properly classified the wrist injury as a hand injury. Therefore, throughout this opinion, we refer to the wrist injury as a hand injury.

. Based on our disposition, we pretermit any discussion of the remaining issues raised by the City.