PITTMAN, Judge.
Johns & Kirksey, Inc. (“the employer”), a metal-roofing and general contractor, petitions for a writ of mandamus directing the Tuscaloosa Circuit Court (“the trial court”) to set aside an interlocutory order it entered on August 9, 2012, in an action brought by Thomas C. Dodson III (“the employee”), pursuant to the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (“the Act”).[1] We deny the petition.
*1008 On July 2, 2010, the employee sued the employer, alleging that he had sustained a cumulative-trauma injury arising out of and in the course of his employment with the employer and seeking both medical benefits under § 25-5-77, Ala.Code 1975, and permanent-disability benefits under § 25-5-57, Ala.Code 1975.[2] Specifically, the employee’s complaint, as amended, alleged that, on November 4, 1996, he had sustained an injury to his lower back while lifting a piece of structural steel in the course of his employment with the employer; that the injury he had sustained on November 4, 1996, had been surgically repaired by Rick McKenzie, M.D. (“Dr. McKenzie”), on November 7, 1996; that the employee and the employer had reached a settlement regarding the amount of the compensation and vocational benefits the employee was due as a result of the November 4, 1996, injury and had left open the amount of the medical benefits the employee was due; that, after recuperating from the November 7, 1996, surgery, the employee had returned to work for the employer and had performed his full duties, which had included performing manual labor; and that the employee thereafter had sustained cumulative-trauma injuries to his back and right leg as a result of performing manual labor in the course of his employment with the employer. Answering, the employer denied that the employee had sustained cumulative-trauma injuries, denied that the employee was entitled to benefits under the Act, and asserted various affirmative defenses.
The trial court set the case for a bench trial on February 29, 2010, that was limited to the issue whether the employee had sustained a compensable injury. On February 28, 2010, the employer moved to strike a portion of the deposition testimony of Dr. McKenzie, which the employee had indicated that he intended to introduce at the February 29, 2010, trial. The trial court tried the issue whether the employee had sustained a compensable cumulative-trauma injury on February 29 and April 17, 2012. During the trial, the trial court heard the live testimony of witnesses and admitted into evidence the deposition testimony of witnesses, written documents, and photographs. The deposition testimony admitted by the trial court included the portion of Dr. McKenzie’s deposition testimony that was the subject of the employer’s motion to strike.
On August 9, 2012, the trial court entered an order (1) determining that the employee had sustained a cumulative-trauma injury that was compensable under the Act, (2) awarding the employee medical benefits under § 25-5-77, (3) deferring the adjudication of the issue whether the employee was entitled to permanent-disability benefits under § 25-5-57 until the employee had reached maximum medical improvement, (4) denying the employer’s motion to strike a portion of Dr. McKenzie’s deposition testimony, and (5) awarding the employee costs in the amount of $1,811. The employer then filed its mandamus petition on September 20, 2012.
*1009 Initially, the employer argues that its mandamus petition should be treated as an appeal because, the employer says, the trial court’s August 9, 2012, order constituted a final judgment. “ ‘An appeal ordinarily lies only from a final judgment.’ ” Alvira v. Campbell, 909 So.2d 847, 849 (Ala.Civ.App.2005) (quoting Tomlinson v. Tomlinson, 816 So.2d 57, 58 (Ala.Civ.App.2001)). “A final judgment completely adjudicates all matters in controversy between the parties.” Stanford v. Feige, 816 So.2d 501, 502 (Ala.Civ.App.2001). This court has held that an order determining that an injury is compensable under the Act and awarding medical benefits only, without adjudicating the issue whether the worker is entitled to disability benefits, does not constitute a final judgment because such an order does not completely adjudicate the worker’s claim under the Act. See Ex parte Cowabunga, Inc., 67 So.3d 136, 138 (Ala.Civ.App.2011); SouthernCare, Inc. v. Cowart, 48 So.3d 632 (Ala.Civ.App.2009), writ quashed, Ex parte SouthernCare, Inc., 48 So.3d 635 (Ala.2010); Homes of Legend, Inc. v. O’Neal, 855 So.2d 536 (Ala.Civ.App.2003); and USA Motor Express, Inc. v. Renner, 853 So.2d 1019 (Ala.Civ.App.2003). In the present case, although the August 9, 2012, order determined that the employee had sustained a compensable injury and awarded him medical benefits under § 25-5-77, it did not adjudicate the employee’s claim insofar as it sought permanent-disability benefits under § 25-5-57; indeed, the August 9, 2012, order expressly deferred the adjudication of the issue whether the employee was entitled to permanent-disability benefits under § 25-5-57 until the employee had reached maximum medical improvement. Accordingly, the August 9, 2012, order is not a final judgment that will support an appeal. Id.
In Cowabunga, Cowabunga, Inc., doing business as Domino’s Pizza (“Cowa-bunga”), sought appellate review of an interlocutory order determining that Thomas W. Short had sustained a compensable injury and awarding Short medical benefits. Although we ruled that an appeal would not lie from that interlocutory order, Cowabunga, 67 So.3d at 138, we determined that Cowabunga was entitled to appellate review of that interlocutory order by a petition for a writ of mandamus because
“[a]waiting review of the order by appeal [after a final judgment had been entered] would only force [Cowabunga] to incur further expenses that it may not owe and that it may never recover from [Short] who, as evidenced by the fact that [Cowabunga] is now voluntarily paying temporary-total-disability benefits, is currently unable to earn wages.”
Cowabunga, 67 So.3d at 139. Although the employer in the present case is not paying the employee temporary-total-disability benefits, delaying review of the trial court’s August 9, 2012, order awarding medical benefits would potentially force the employer to incur medical expenses it may not owe and may not be able to recover from the employee. Accordingly, we conclude that an appeal would not afford the employer an adequate remedy in this ease, and, therefore, we will review the trial court’s August 9, 2012, order pursuant to the employer’s mandamus petition. See Cowabunga.
“Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).
*1010 The employer argues that the trial court erred in determining that the employee had proved by clear and convincing evidence that he had sustained a com-pensable cumulative-trauma injury.
“In order to prove that an injury arose from work-related cumulative trauma, an employee must present clear and convincing evidence of legal and medical causation. Valtex, Inc. v. Brown, 897 So.2d 332, 334 (Ala.Civ.App.2004); Safeco Ins. Co. v. Blackmon, 851 So.2d 532, 537 (Ala.Civ.App.2002); and § 25-5-81(c), Ala.Code 1975. ‘Clear and convincing’ evidence is
“ ‘evidence that, when weighted against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.’
“§ 25-5-81(c), Ala.Code 1975.
“ ‘To establish legal causation, the employee must prove that “the performance of his or her duties as an employee exposed him or her to a danger or risk materially in excess of that to which people are normally exposed in their everyday lives.” Ex parte Trinity Indus., Inc., 680 So.2d 262, 267 (Ala.1996). To establish medical causation, the employee must prove that the danger or risk to which the employee was exposed “ ‘was in fact [a] contributing cause of the injury’ ” for which benefits are sought. Id. at 269 (quoting City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729, 732 (Civ.1975)).’ “Madix, Inc. v. Champion, 927 So.2d 833, 837 (Ala.Civ.App.2005). On appeal, when an employer challenges a finding that an employee has proven a work-related cumulative-trauma injury, this court reviews the record to determine whether the trial court, based on its weighing of the competing evidence, reasonably could have been clearly convinced that cumulative trauma in the employment legally and medically caused the injury. Ex parte McInish, 47 So.3d 767, 770 (Ala.2008).”
City of Gadsden v. Scott, 61 So.3d 296, 301-02 (Ala.Civ.App.2010).
“In deciding whether it was reasonable for a trial court to have concluded that a fact was proven by clear and convincing evidence, i.e., whether it was reasonable for the fact-finder to reach a firm conviction as to each essential element of the claim and infer a high probability as to the correctness of the conclusion, the appellate court must limit its determination to “whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court’s weighing of the evidence, that would’ produce a firm conviction in the mind of the trier of fact. Ex parte McInish, 47 So.3d [767,] 778 [(Ala.2008) ].
“As to the ‘substantial evidence’ standard of appellate review, ‘substantial evidence’ properly is defined as ‘ “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Further, Ala.Code 1975, § 25-5-81(e)(2), mandates the use of the ‘substantial evidence’ standard of appel *1011 late review when reviewing ‘pure findings of fact,’ but it does not distinguish between cases in which a claimant’s evi-dentiary burden at trial is a ‘preponderance of the evidence’ or ‘clear and convincing’ evidence; because the Act is silent in that regard, appellate courts must review judgments by viewing evidence adduced to meet either the ‘preponderance’ or the ‘clear and convincing’ evidentiary burden under the same ‘substantial evidence’ standard, foreclosing appellate reweighing of evidence in both types of cases. Ex parte McInish, 47 So.3d at 773. That said, the ‘substantial evidence’ standard of review is applied in ‘necessarily different degrees’ in the two types of cases, with ‘the quantum of proof necessary to sustain on appeal’ a finding of fact in a ‘clear and convincing’ context being ‘greater than’ that in a ‘preponderance’ context. Id. at 777-78.”
DeShazo Crane Co. v. Harris, 57 So.3d 105, 108 (Ala.Civ.App.2009).
In its August 9, 2012, order, the trial court made the following pertinent factual findings:
“In 1996, the [employee] injured his lower back while working for the [employer] and underwent surgery to repair it. This injury was accepted as compen-sable under the Workers’ Compensation Act by [the employer’s] workers’ compensation insurer at the time and the claim was settled, leaving the medical benefits open. Thereafter, the [employee] returned to work for the [employer] at full duty, and was not on light, limited or restricted duty. He performed his normal job in a normal fashion. He then left the [employer] to work for another company. In 2005, he returned to work for the [employer] as a superintendent. Again, he performed his normal job in a normal manner and was not on limited, light, or restricted duty. Beginning in 2008, the [employer] started having trouble with his back and reported to the [employer] that he thought he would have to have another surgery if his back continued to deteriorate. On January 27, 2010, the [employee] returned to Dr. Rick McKenzie, the surgeon who had operated on him in 1996. Dr. McKenzie noted that the [employee] needed additional surgery. In February 2010, the [employee’s] employment duties changed to an office setting. He has continued working on a full time basis in that capacity through the date of trial. The [employee] is not claiming any temporary total disability.
“The court finds that the [employee’s] work as a superintendent from 2005 until February 2010 involved a significant amount of manual labor, in addition to supervisory responsibilities. While the witnesses’ testimony differed as to the percentage of time that the [employee] spent performing manual labor as compared to supervisory duties, all witnesses testified that the [employee’s] work included elements of manual labor. After weighing the credibility of the witnesses, the court finds that the [employee’s] job included a significant amount of bending over to work on items at his feet or underneath them, lifting and carrying items of varying weights, standing, walking, and climbing. These activities were not performed in sporadic, isolated instances but were a routine part of his everyday job. Dr. McKenzie testified by deposition that if the [employee] performed this type of work in his job, then his back injury was at least work related in part. He summarized his testimony by stating:
“ ‘It is impossible to say that this injury is entirely work-related. He has a job that requires a lot of heavy lifting and does a lot of lifting floor to knee. The best I can surmise is that this is a *1012 combination of wear and tear that has occurred from just working and just exacerbated by this gentleman’s degenerative disc problems and weak disc that present as a combination of his work-related event. The only way I can be fair about this deal is to say that this is a fifty percent work comp issue, secondary to the disc rupture that predisposed weakness of the disc space. And then fifty percent ... because of the job and type activities that he does. This is not an entirely work related event; however this clearly has work related event issues associated with it. And I am deeming this a fifty fifty problem.’ (McKenzie deposition September 29, 2011, pp. 41 — 42).
“From the evidence, the court finds that the [employee’s] work from 2005 through February 2010, did, in fact, contribute to his need for additional surgery and the evidence is clear and convincing (as defined by the Legislature) that he has a compensable cumulative injury.
“The [employer] has denied the [employee’s] claim, although it is noted that this case presented conflicting evidence and there were grounds for the denial.”
Based on those factual findings, the trial court determined that the employee had sustained a compensable cumulative-trauma injury while working for the employer from 2005 through February 2010.
The employer argues that the trial court’s determinations that the employee had proved by clear and convincing evidence that his duties had required him to perform “a significant amount of manual labor” and that his performance of that manual labor had exposed him to a danger or risk of sustaining a cumulative-trauma injury that was materially in excess of that to which people are normally exposed in their everyday lives are not supported by substantial evidence. The evidence was in conflict regarding how much manual labor the employee had been required to perform in the course of his employment from 2005 through February 2010 and regarding the nature of the manual labor he had been required to perform during that period. The employee testified at trial that he had spent approximately 60% of his time at work performing manual labor from 2005 through February 2010. He further testified that the manual labor he had performed during that period had involved lifting heavy materials and equipment; installing and retrofitting roofs, tasks that had required that he bend, stoop, squat, and kneel repetitively; and performing manual labor on general-contracting jobs. He further testified that the majority of the work he had performed in installing and retrofitting roofs was at the level of his feet.
Jerry Wyatt, one of the employer’s subcontractors, testified at trial that he had worked on a general-contracting job with the employee for 6 weeks in 2008 and that the employee had spent approximately 75% to 80% of his time on that job performing manual labor. Wyatt further testified that the manual labor performed by the employee on that job had involved hanging metal doors that weighed approximately 65 to 70 pounds each, unloading 4-foot by 8-foot sheets of Sheetrock brand drywall product weighing approximately 45 to 50 pounds each, carrying 2 sheets of that product at a time with the employee’s helper a distance of 35 yards, and installing approximately 50 linear feet of lockers packaged in boxes weighing approximately 100 pounds.
Stuart Kirksey (“Stuart”), who had worked for the employer from 1997 until February 2011, having begun as a laborer and having worked his way up to the position of general superintendent, testified by *1013 deposition. He testified that he had worked on jobs with the employee and that the employee had spent the majority of his time on those jobs performing manual labor. Stuart also testified that he had left his employment as a general superintendent with the employer in February 2011 because of the toll the manual labor he had been required to perform as a general superintendent had taken on his body. In addition, Stuart testified that William Johns and Robert Kirksey (“Robert”), the owners of the employer, had rarely come to job sites.
The two owners of the employer also testified at trial. Johns estimated that, during the period from 2005 through February 2010, the employee had spent 50% of his time performing manual labor, with 25% of that manual labor having fallen in the light-duty range and 25% in the medium-duty range. Robert estimated that the employee had spent 20% of his time performing manual labor and that the employee had been assisted by a helper in performing manual labor. Charles Winston, a laborer employed by the employer who testified at trial, estimated that the employee had spent approximately 35% to 40% of his time performing manual labor.
Given the conflicting evidence regarding how much manual labor the employee had performed during the period from 2005 through February 2010 and regarding the nature of that manual labor, we conclude that the trial court, based on its weighing of the competing evidence, reasonably could have determined that the employee had performed a substantial amount of manual labor in the course of his employment with the employer from 2005 through February 2010; that that manual labor had involved lifting and repetitive bending, stooping, squatting, and kneeling; and that his performance of that manual labor had exposed him to a danger or risk materially in excess of that to which people are normally exposed in their everyday lives. See Ex parte Trinity Indus., Inc., 680 So.2d 262, 267 (Ala.1996); and City of Gadsden, supra. Consequently, we conclude that the trial court, based on its weighing of the competing evidence, properly ruled that the manual labor performed by the employee was the legal cause of cumulative-trauma injury to his back. Id.
With respect to the issue whether the manual labor performed by the employee constituted the medical cause of his back injury, the trial court had before it the transcript of the deposition testimony of Dr. McKenzie, Dr. McKenzie’s written medical record regarding a visit by the employee on March 10, 2010 (“the medical record”), and the transcript of the deposition testimony of Les Fowler, M.D. (“Dr. Fowler”), the physician selected by the employer’s insurance carrier to perform an independent medical evaluation of the employee. In pertinent part, the medical record states:
“The [employee] and I had a nice discussion today in the presence of his wife regarding his previous injury. He had a previous huge disc herniation at L5-S1 which was treated by discectomy. He had done well from this but over time has developed worsening back pain. He returned with severe disc degeneration at L5-S1, which was his ruptured disc level.
“It is impossible to say that this injury is entirely work-related. He has done well, he has a job that requires a lot of heavy lifting. He does a lot of lifting from floor-to-knee. The best I can surmise is, this is a combination of wear and tear that has occurred from just working, and this exacerbated this gentleman’s degenerative disc problems and weak disc that was present as a combination of his work-related event.
*1014 “The only way I can be fair about this deal is to say that this is a 50% workman’s comp issue secondary to the disc rupture, the predisposed weakness of the disc space, and then 50% because of the type of job and activities he does. This is not an entirely work-related event; however, this clearly has work-related event issues associated with it, and I am deeming this a 50/50 problem.”
Consistent with the medical record, Dr. McKenzie testified in his deposition that the manual labor that the employee had performed in the course of his employment with the employer had contributed to the degeneration of his disk at L5-S1.
In his deposition, Dr. Fowler gave the following testimony:
“[Counsel for the employer:] Cumulative trauma is the type claim he is making, Doctor. And I think we can stipulate [the employee] continued to work for this company in several different positions from 1996 until I assume even through today?
“[Counsel for the employee]: Correct. “[Counsel for the employer:] Assuming those facts to be true[,] Doctor[,] can you say to a reasonable degree of medical certainty whether or not his continued work in that environment would have contributed independently to his current medical condition?
“[The witness:] Yes. I mean the work that he is doing if it is, you know, physical type activity with lifting, pushing, pulling, those will have contributed to the problem that he is experiencing right now.
“[Counsel for the employer:] Would it have permanently worsened his condition?
“[The witness:] Yes.”
We conclude that, based on the medical record, the deposition testimony of Dr. McKenzie, and the deposition testimony of Dr. Fowler, the trial court reasonably determined that the manual labor the employee had performed in the course of his employment with the employer from 2005 through February 2010 was in fact a contributing cause of the employees’ disk degeneration at L5-S1. See Ex parte Trinity Indus., supra; and City of Gadsden, supra. Consequently, we conclude that the trial court, based on its weighing of the competing evidence, did not err in ruling that manual labor the employee had performed in the course of his employment with the employer from 2005 through February 2010 caused the employee’s cumulative-trauma injury to his back from a medical standpoint. Id.
Based upon the foregoing analysis, we must conclude that the employer has failed to show that it has a clear legal right to a writ of mandamus directing the trial court to set aside its August 9, 2012, order insofar as that order determined that the employee has sustained a cumulative-trauma injury that is compensable under the Act and awarded the employee medical benefits under § 25-5-77.
The employer also argues that the trial court acted outside its discretion in denying the employer’s motion to strike a portion of Dr. McKenzie’s deposition transcript. However, even if the trial court had stricken Dr. McKenzie’s deposition transcript in its entirety, the medical record and Dr. Fowler’s deposition testimony constitute substantial evidence supporting the trial court’s determination that the employee had proved medical causation. Therefore, assuming, without deciding, that the trial court erred in denying the employer’s motion to strike, its denial of the motion was harmless error. See Rule 45, Ala. R.App. P. (providing that the improper admission of evidence is not a basis *1015 for relief in an appellate court when the error complained of is harmless).
Finally, the employer’s petition states that the employer is seeking a writ of mandamus directing the trial court to set aside its August 9, 2012, order insofar as that order awarded the employee costs in the amount of $1,811. “According to §§ 25-5-89 and 12-21-144, [Ala.] Code 1975, the taxing of costs in a case is within the discretion of the trial court, subject to the guideline of Rule 54(d), [Ala.] R. Civ. P.” Littleton v. Gold Kist, Inc., 480 So.2d 1236, 1238 (Ala.Civ.App.1985); see also Ex parte Ellenburg, 627 So.2d 398, 400 (Ala.1993). The employer has made no showing whatsoever that the trial court acted outside its discretion in awarding the employee costs in the amount of $1,811.
Accordingly, for the reasons discussed above, we deny the employer’s petition in its entirety.
PETITION DENIED.
THOMPSON, P.J., concurs.
MOORE, J., concurs specially, which THOMAS, J., joins.
DONALDSON, J., recuses himself.

. The employer’s mandamus petition, which was filed on September 20, 2012, also sought relief with respect to interlocutory orders entered by the trial court on July 20 and October 27, 2011; however, on September 25, 2012, we dismissed the employer’s petition insofar as it had sought relief with respect to those orders because the petition was untime *1008 ly as to them. See Rule 21(a)(3), Ala. R.App. P. (“The presumptively reasonable time for filing a petition seeking review of an order of a trial court ... shall be the same as the time for taking an appeal.”), and Rule 4(a)(1), Ala. R.App. P. ("Except as otherwise provided herein, in all cases in which an appeal is permitted by law as of right ... to a court of appeals^ the notice of appeal required by Rule 3[, Ala. R.App. P.,] shall be filed with the clerk of the trial court within 42 days (6 weeks) of the entry of the judgment or order appealed from....”).

. The employee did not seek temporary-disability benefits.