Rel: October 24, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2024-0979

_____

### MMR Constructors, Inc.

### v.

### Darrell Wayne Taylor

### Appeal from Mobile Circuit Court
### (CV-24-901049)

MOORE, Presiding Judge.

MMR Constructors, Inc. ("the employer"), appeals from a judgment of the Mobile Circuit Court ("the trial court") determining that Darrell Wayne Taylor ("the employee") received personal injuries from an accident arising out of and in the course of his employment with the

employer and awarding him temporary-total-disability compensation and medical benefits under the Alabama Workers' Compensation Act ("the Act"), Ala. Code 1975, § 25-5-1 et seq. See Ex parte Lowe's Home Ctrs., LLC, 209 So. 3d 496, 502 (Ala. Civ. App. 2016) (authorizing appeals from such judgments).  We affirm the trial court's judgment.

Background

On March 20, 2024, the employee was involved in a motor-vehicle accident while in the course of his employment.  On March 22, 2024, the employer denied the employee's claim for workers' compensation benefits.  On April 25, 2024, the employee filed a complaint to enforce his rights under the Act.  On June 14, 2024, the employer filed an answer to the complaint.  On June 25, 2024, the employee filed a motion requesting that the trial court conduct an evidentiary hearing to determine the compensability of his injuries.  See Ex parte Publix, Inc., 963 So. 2d 654 (Ala. Civ. App. 2007).  The trial court granted the motion and held the compensability hearing on October 16, 2024.  At the hearing, the trial court received the following pertinent evidence.

The employee developed a cough and was treated for that condition at an urgent-care center in February 2024.  On March 18, 2024, the

2

employee returned to the urgent-care center, where he was diagnosed with acute bronchitis, but he was cleared to return to work. On March 20, 2024, the employee reported to work on a construction project at a plant in Calvert. The employee commenced his ordinary duties, which, at that time, included hauling fuel cans throughout the plant in a "buggy," a motor vehicle similar to a golf cart. The buggy was equipped with some safety devices, but not an air bag. The employer's corporate representative testified that he did not think that operating the buggy was any riskier than driving an automobile on a public road.

At approximately 10:00 a.m. on March 20, 2024, the employee was driving the buggy on a private road at the plant when, he claimed, a construction vehicle, which he called a forklift, pulled out in front of him. The employee said that he inhaled exhaust fumes from the forklift and started severely coughing before quickly losing consciousness. A witness testified that he did not see any vehicle in front of the buggy at the time of the accident. After the employee lost consciousness, he slumped to his left and the buggy accelerated from 5 miles per hour to approximately 10 to 15 miles per hour. The buggy swerved to the left, and the employee's head slumped outside of the cab. The buggy left the road and hit a nearby

3

print shack; the employee's exposed head struck a metal box. The buggy came to a stop, where it was shut down by a nearby worker responding to the accident.

The employee was treated for his injuries at the University of South Alabama Hospital. He told the hospital staff that he had been coughing for the past four days, but he did not mention breathing in any exhaust fumes before he started coughing and lost consciousness. The employee continued to have coughing episodes while being treated. The employee was diagnosed primarily with a skull fracture, a forehead laceration, and vasovagal syncope and, secondarily, with hypertension, allergic rhinitis, long-term tobacco use, and a right-bundle-branch block. After determining that the employee started coughing due to a personal medical condition, the employer denied his claim for workers' compensation benefits on March 22, 2024. At the time of the compensability hearing, the employee had not returned to work since the accident.

At the hearing, two medical experts testified. The employee's medical expert, Dr. Todd Brian Edminton, an orthopedic surgeon, opined that the employee experienced a severe coughing fit, an acute change in

4

blood pressure, and a sudden increase in intracranial pressure, which caused the employee to pass out. Dr. Edminton considered the cause of the coughing to be multifactorial, possibly relating to the industrial environment, the inhalation of exhaust fumes, and the employee's underlying medical conditions. Dr. Edminton believed that the employee had suffered a traumatic brain injury from the accident.

The employer's medical expert, Dr. Amber Gordon, a neurosurgeon, explained that, in addition to acute bronchitis and allergic rhinitis, the employee had a preexisting heart condition described in his medical records as a right-bundle-branch block, meaning that half of the electrical current necessary to cause the heart to pump blood throughout the body in a synchronous manner was blocked. Dr. Gordon testified that the employee experienced vasovagal syncope secondary to a severe cough. According to Dr. Gordon, vasovagal syncope is

> "a fancy medical term and essentially what it means is that the intrathoracic pressure rose when he had these multiple repeated coughing episodes and that, in conjunction with decreased output of blood from his heart, led to decreased blood flow going up to his brain and that is what resulted in him passing out."

Dr. Gordon testified that, at the time of the accident, the employee was suffering from acute bronchitis and coughing fits. Dr. Gordon said:

5

"That, in conjunction with his malfunctioning heart, led to him having deceased blood flow to his brain and that is what caused him to pass out thus having a wreck which led to a laceration, a very mild nondisplaced right frontal skull fracture, and a concussion."

### The Judgment

In its findings of fact, the trial court determined that there was no forklift. By implication, the trial court found that the employee had not inhaled exhaust fumes that triggered his coughing episode. The trial court instead concluded that the employee had started coughing and had lost consciousness due solely to his preexisting medical conditions. The trial court nevertheless concluded that the employee was injured in an accident arising out of his employment.

In its conclusions of law, the trial court determined that the employment "need only be a contributing cause -- not the sole or dominant cause -- of an accident or injury to be compensable." The trial court further stated: "In determining whether an on-the-job injury arises out of the employment, the [c]ourt employs the increased risk test to determine whether the employment increases the risk of the accident or injury." The judgment further provided, in pertinent part:

6

"7. The increased risk test is satisfied if the employee demonstrates that in the performance of his job he was exposed to conditions of risk or hazard that he would not have been exposed to had he not been performing his job. Gold Kist v. Pope, 539 So. 2d 291 (Ala. Civ. App. 1988).

"8. An accident arises out of the employment if the employment materially increases the risk that an accident will occur. See, e.g., Cummings Trucking Co. v. Dean, 628 So. 2d 902 (Ala. Civ. App. 1993) (accident arose out of the employment where a truck driver exposed to fumes from diesel fuel became dizzy, fell, and broke his hip).

"9. An accident also arises out of the employment if the employment increases the risk of injuries from an accident by placing the employee in a dangerous position where the consequences of an accident would be more severe than otherwise. See, e.g., Hornady Transportation, LLC v. Fluellen, 116 So. 3d 236 (Ala. Civ. App. 2012) ([a]ccident arose out of the employment where truck driver was killed when he wrecked his truck after a possible coronary event); Gold Kist v. Pope, 539 So. 2d 291 (Ala. Civ. App. 1988) ([a]ccident arose out of the employment where employee with a possible seizure disorder fell from an estimated height of eight feet while taking inventory on top pallets of feed; the [c]ourt stated that 'it would appear to this court that taking inventory on top of an eight-foot stack of feed above a concrete floor exposes the employee to a risk or hazard that he would not have been exposed to had he not been performing his job'); Irby v. Republic Creosoting Co., 228 F.2d 195 (5th Cir. 1955) ([a]ccident arose out of the employment where employee suffered a spinal cord injury when he fell three-feet from platform after an epileptic seizure; the [c]ourt stated that 'the severity of the fall and the angle and position at which [the employee] struck the ground were directly influenced by['] his fall from three feet, one of the conditions of his employment.)

"10. Based on all of the for[e]going it is this [c]ourt's determination that [the employee]'s accident arose out of his employment because in the performance of his job he was exposed to conditions of risk or hazard that he would not have been exposed to had he not been performing his job, including but not limited to the operation of the buggy without an enclosed cabin in a commercial construction zone that caused or contributed to him fracturing his skull after losing consciousness from coughing."

The trial court concluded that the employee was entitled to temporary-total-disability benefits until he reached maximum medical improvement, and it also ordered the employer to pay for his reasonably necessary medical expenses.

## The Issue

The employer argues that the trial court erred in determining that the employee's accident arose out of his employment. The employer maintains that the trial court misstated and misapplied the legal-causation standard to reach an incorrect conclusion that the employee was injured in a work-related accident. The employer maintains that the employee suffered an accident brought on by his preexisting medical

8

conditions and that his employment conditions did not increase the risk of the accident.[1]

Standard of Review

The employer does not contest the findings of fact made by the trial court that the employee lost consciousness due to his underlying medical conditions while operating the buggy and that the employee received personal injuries to his head in the resulting accident. The employer argues only that the trial court erred in its conclusion of law that the accident arose out of the employment.

"In reviewing the standard of proof set forth [in the Act] and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness." Ala. Code 1975, § 25-5-81(e)(2). "This court

---

[1]The employer does not argue on appeal many of the points raised by the dissent: that the trial court failed to determine the cause of the employee's coughing spell; that the trial court did not determine that the employee's coughing spell was caused by his preexisting medical conditions; that the increased-risk test does not apply in this case; that Ex parte Patton, 77 So. 3d 591 (Ala. 2011), determined that only the "set-in-motion" causation test applies in accident cases; and that the "set-in-motion" test applies to this case. "'It is not the function of an appellate court to advocate a position on behalf of an appellant.' J.B. v. Cleburne County Dep't of Human Res., 992 So. 2d 34, 42 (Ala. Civ. App. 2008). Thus, we are not permitted to even consider the point[s] raised by the dissent as a ground for reversing the trial court's judgment." McCulloch v. Campbell, 60 So. 3d 909, 919 (Ala. Civ. App. 2010).

reviews the application of the law to undisputed facts de novo." Matthew's Masonry Co. v. Aldridge, 25 So. 3d 464, 467 (Ala. Civ. App. 2009). In assessing the correctness of the judgment, we are not limited to the reasons given by the trial court for rendering that judgment. See Massey v. United States Steel Corp., 264 Ala. 227, 229, 86 So. 2d 375, 377 (1955). If the judgment is legally correct, even for reasons other than those stated by the trial court, this court will affirm the judgment. See CVS/Caremark Corp. v. Washington, 121 So. 3d 391, 399 (Ala. Civ. App. 2013).

Analysis

To recover benefits under the Act, an employee must prove that his or her personal injuries were "caused by an accident arising out of and in the course of his or her employment ...." Ala. Code 1975, § 25-5-51. Whether an accident producing injury to an employee "arises out of ... employment" depends in any case "upon its own particular facts and circumstances and not by reference to some formula. But it is usually said that the phrase 'arise out of' employment refers to employment as the cause and source of the accident." Massey, 264 Ala. at 230, 86 So. 2d at 378. "[T]he burden is on the claimant to establish a definite causal

connection between the work and the injury." Slimfold Mfg. Co. v. Martin, 417 So. 2d 199, 202 (Ala. Civ. App. 1981). To prove this causal connection, the employee must prove both legal causation and medical causation. See Ex parte Trinity Indus., Inc., 680 So. 2d 262 (Ala. 1996). Legal causation "refers to the standard used by the courts to determine if the risk causing the injury sufficiently relates to the employment to be considered an occupational hazard." 1 Terry A. Moore, Alabama Workers' Compensation § 10:2 (2d ed. 2013) (citing Ex parte Patton, 77 So. 3d 591 (Ala. 2011); Dallas Mfg. Co. v. Kennemer, 243 Ala. 42, 8 So. 2d 519 (1942); Wal-Mart Stores, Inc. v. Chamless, 737 So. 2d 467 (Ala. Civ. App. 1999)).

In this case, the trial court determined that the employee lost consciousness following a severe coughing spell brought on by an idiopathic condition, meaning a condition peculiar to the employee, a preexisting physical weakness or disease. See Ex parte Patterson, 561 So. 2d 236, 238 n.2 (Ala. 1990). The trial court concluded that, under those circumstances, the "increased-risk test" applied when assessing whether the conditions of his employment legally caused the employee's accident. The employer agrees that the increased-risk test should govern

11

the case. The employer maintains, however, that the trial court did not correctly formulate the increased-risk test, that it erred in finding that the employment conditions only had to contribute to the accident, and that it failed to compare the risk to which the employee was exposed in the buggy accident against the risk of an ordinary traveler on the public highways.

The Increased-Risk Test

The case of Irby v. Republic Creosoting Co., 228 F.2d 195, 196 (5th Cir. 1955), represents the clearest example of how the increased-risk test applies in the context of an accident precipitated by an idiopathic condition. While working on a three-foot platform for his employer, James Irby suffered an epileptic seizure and fell to the floor. The United States Court of Appeals for the Fifth Circuit, applying Alabama law, determined that the injuries Irby sustained in the fall were compensable. The court said: "We recognize that in idiopathic falls ... the origin of the fall is personal and therefore requires definite and affirmative employment contribution." 228 F.2d at 198. The court concluded that the employment had contributed to the accident because, it said, although the fall began due to the epileptic seizure, the employment

12

increased the length of the fall, and the likelihood of injury, by placing Irby at a dangerous height. Thus, the court held, "there was a direct causal connection between the conditions under which [Irby] worked and the accident which caused his injury." Id. Although Irby is not binding authority on this court, we have considered it as persuasive authority, and, in several Alabama cases addressing the compensability of injuries from falls associated with idiopathic factors, we have generally followed the logic applied in Irby.

In Martin, supra, Pelham Martin fell on a level floor while standing near a copy machine while working, and he subsequently died from the injuries received in the fall. Slimfold Manufacturing Company, Martin's employer, presented evidence indicating that Martin had suffered a fainting spell due to cirrhosis of the liver, but the Houston Circuit Court found that the cause of the fall was undetermined. Despite that finding, the court awarded death benefits to Martin's widow. On appeal, this court determined that the widow had failed to prove legal causation. We explained that, to prove that Martin's fall had arisen out of his employment, the widow had to show that the employment was the source and cause of the accident. This court said:

"Our supreme court in Wooten v. Roden, 260 Ala. [606,] 610, 71 So. 2d [802,] 805 [(1954)], stated that in order to satisfy the 'source and cause' requirement 'the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment and not otherwise....' The causation requirement was further elucidated in City of Tuscaloosa v. Howard, [55 Ala. App. 701, 318 So. 2d 729 (Ala. Civ. App. 1975)]. There, Presiding Judge Wright, speaking for this court, stated:

> "'If in the performance of the duties for which he is employed an employee is exposed to a danger or risk materially in excess of that to which people not so employed are exposed, and an injury occurs, such injury may legally be determined to have arisen from his employment and be an accident under the statute. Such can be the legal test of causation....'

"55 Ala. App. at 705, 318 So. 2d at 732."

Martin, 417 So. 2d at 201-02. We concluded that the widow had not established legal causation because she did not prove that Martin's employment exposed him to an increased risk of injury. 417 So. 2d at 202.

The widow argued that, based on some dicta in Irby, unexplained falls should be compensable. In rejecting that argument, this court concluded that an unexplained fall, like an idiopathic fall, could be compensable only when the employment conditions contributed to the accident. This court said:

14

"As stated above, the claimant in <u>Irby</u>, at the time of his fall, was working on a three foot platform. <u>Thus, the conditions under which he worked exposed him to a definite hazard not encountered by persons not so employed</u>. The Fifth Circuit apparently recognized this by holding that the conditions of the claimant's employment supplied the causal connection between the claimant's work and his injury. Therefore, in <u>Irby</u>, even if the reason for the claimant's fall was unexplained, <u>the conditions of his employment would have been the same and would have supplied the causal connection</u>."

<u>Martin</u>, 417 So. 2d at 202 (emphasis added). We agreed with the <u>Irby</u> court that, when an employee loses consciousness and falls due to an idiopathic condition or for some unexplained reason, the accident may be considered to arise out of the employment if the conditions of the employment increase the risk of injury to the employee.

In <u>Gold Kist, Inc. v. Pope</u>, 539 So. 2d 291 (Ala. Civ. App. 1988), Robert Pope was taking a rush inventory atop some pallets of feed approximately eight feet above a concrete floor when he fell. After the fall, he was taken to a local hospital and diagnosed with a seizure disorder. The Perry Circuit Court determined that Pope had suffered a compensable injury. On appeal, this court determined that, to prove legal causation, Pope had to meet the increased-risk test by showing that "'in the performance of [his] duties [he] was exposed to a danger or risk

15

materially in excess of that to which people not so employed are exposed.'" 539 So. 2d at 292 (quoting Fordham v. Southern Phenix Textiles, Inc., 387 So. 2d 204, 205 (Ala. Civ. App. 1980)). This court said:

> "As concerns legal causation, it would appear to this court that taking inventory on top of an eight-foot stack of feed above a concrete floor exposes the employee to a risk or hazard that he would not have been exposed to had he not been performing his job. Therefore, we find that legal causation was established. Ragland Brick Co. v. Campbell, 409 So. 2d 443 (Ala. Civ. App. 1982)."

539 So. 2d at 292.

In Pittsburg & Midway Coal Mining Co. v. Rubley, 882 So. 2d 335 (Ala. Civ. App. 2002), Albert Franklin Rubley died following a fall while working. The Tuscaloosa Circuit Court determined that Rubley had fallen due to idiopathic factors. On appeal from a judgment awarding Rubley's widow death benefits, this court said:

> "As one noted commentator has stated, 'idiopathic fall cases begin with an origin which is admittedly personal and which therefore requires some affirmative employment contribution to offset the prima facie showing of personal origin.' 1 Lex K. Larson, Larson's Workers' Compensation Law § 9.01[1] (2001); cf. Brownfield v. Revco D.S., Inc., 612 So. 2d 1203 (Ala. Civ. App. 1992) (summary judgment denying workers' compensation benefits for an injury arising from a worker's placement of his head in a part of a motorized lifting device was supported by undisputed evidence that the worker was subject to seizures and had failed to take anti-seizure medications)."

16

882 So. 2d at 341. The Tuscaloosa Circuit Court determined that the employment had contributed to the accident because Rubley

> "'had to climb 100 or more stairs to get out of the mine, a condition not encountered by persons not so employed.' Several of [Rubley's] coworkers gave testimony that would support the existence of the quantity of steps found by the trial court; in addition, one of these coworkers, Holmes, testified that some steps were one-half inch taller than the others, and that the steps would occasionally become slippery and retain coal residue."

882 So. 2d at 341. However, this court determined that there was no evidence to support the finding that Rubley had slipped and fallen due to a hazardous condition while ascending the stairs. This court also concluded that there was no evidence showing that the employment conditions had contributed to the fall in any other way. Without proof of an affirmative employment contribution, this court decided that the Tuscaloosa Circuit Court had erred in finding that Rubley had died due to an accident arising out of his employment.

In Brown v. Patton, 77 So. 3d 587, 589 (Ala. Civ. App. 2009), rev'd, 77 So. 3d 591 (Ala. 2011), this court examined the caselaw regarding the compensability of workplace falls. This court said:

> "The principal 'fault line' that has been revealed by the application of the 'arising out of' requirement by Alabama courts is the distinction between accidents that are at least

17

partially attributable to an affirmative employment contribution and those that are attributable solely to what are called 'idiopathic' factors, a term that 'refers to an employee's preexisting physical weakness or disease' that is '"peculiar to the individual"' employee. Ex parte Patterson, 561 So. 2d 236, 238 n.2 (Ala.1990). Thus, a fall may, under the appropriate circumstances, properly be deemed an accident arising out of employment. See [Phenix Med. Park Hosp. v. Kozub, 575 So. 2d 1162, 1163 (Ala. Civ. App. 1991)] (even though nursing assistant had preexisting arthritic condition in her right ankle, fall sustained because assistant hurriedly left a patient's room was 'trace[able] ... to a proximate cause set in motion by the employment, rather than some other agency'). In contrast, a fall may, under the appropriate circumstances tending to show an idiopathic factor, not be an accident arising out of employment. See Rubley, 882 So. 2d at 342 (holding that a coal miner's fall after completing ascent of potentially slippery mine stairs lacked an 'affirmative employer contribution' and necessarily would have been the product of medical factors personal to the miner such as his low blood sugar)."

77 So. 3d at 589. This court concluded, however, that, based on Ex parte Byrom, 895 So. 2d 942 (Ala. 2004), our supreme court, by holding that a fall arises out of the employment when substantial evidence shows that the fall occurred as alleged, had abandoned the increased-risk test, which required proof of an affirmative employment contribution to a workplace fall. On petition for the writ of certiorari, our supreme court reversed our judgment, holding that it had not intended to displace prior law requiring proof of legal causation in all types of cases. Ex parte Patton, 77 So. 3d

at 596-97. Thus, the supreme court restored the previous legal-causation standard used to differentiate compensable and noncompensable workplace falls.

As Alabama law now stands, when an employee claims that his or her accident resulted from a combination of idiopathic factors and hazardous employment conditions, the employee must meet the increased-risk test for legal causation. Generally,

> "[i]n order to establish 'legal causation,' ... the injured employee ha[s] to show that 'the performance of the duties for which he [or she] is employed ... expose[d] [him or her] to a danger or risk materially in excess of that to which people not so employed are exposed [ordinarily in their everyday lives].' [City of Tuscaloosa v. Howard, 55 Ala. App. [701,] 705, 318 So. 2d [729,] 732 [(Ala. Civ. App. 1975)]."

Ex parte Trinity Indus., 680 So. 2d at 266. Pursuant to this standard, if an employee who loses consciousness due to an idiopathic condition can show that his or her employment conditions affirmatively contributed to the resulting accidental injury, the employee may prove legal causation. If the employee satisfactorily proves that the manner in which he or she was employed increased the risk of accidental injury, it may properly be determined that the accidental injury arose out of the employment.

19

The Contributing-Cause Standard

The employer contends that the trial court erred in concluding that the employment conditions need only be a contributing cause to the accidental injury. The employer points out that the trial court cited Ex parte Valdez, 636 So. 2d 401, 405 (Ala. 1994), to support that proposition of law. Ex parte Valdez discussed solely the issue of medical causation, i.e., whether the work-related accident caused the particular injuries in dispute, not the issue of legal causation, i.e., whether or not the accident was work-related. Legal causation and medical causation are separate elements that must be satisfied for an employee to receive compensation. See Ex parte Trinity Indus., 680 So. 2d at 266. "Once a claimant establishes 'legal causation,' he or she then must establish 'medical causation,' … by producing evidence tending to show that the particular exposure to [a work-related] risk ... 'was in fact [a] contributing cause of the [complained-of] injury.'" Id. at 266-67 (quoting City of Tuscaloosa v. Howard, 55 Ala. App. 701, 706, 318 So. 2d 729, 732 (Ala. Civ. App. 1975)). In Ex parte Valdez, our supreme court determined that, to prove medical causation, "'[i]t is not necessary that the employment conditions be the sole cause, or dominant cause, so long as they are a contributing cause.'"

20

636 So. 2d at 405 (quoting Arthur Larson, The Law of Workmen's Compensation § 41.64(c) (1991)). The employer argues that the contributing-cause standard applies only to medical causation, not legal causation.

However, as the foregoing summary of the caselaw illustrates, Alabama law embraces the rule that, if the employment conditions affirmatively contribute to the accident or injury precipitated by idiopathic factors, the accidental injury resulting from the combination of those conditions arises out of the employment. Thus, in determining legal causation in cases involving accidents precipitated by idiopathic factors, this court must determine whether the employment conditions were a contributing cause of the accidental injury.

Based on the correct legal standard, the accident may be primarily caused by an idiopathic condition, such as Irby's epilepsy or Pope's seizure disorder, but, if the employment conditions contribute to the accident by increasing the likelihood of injury to the employee, the employment may be considered the legal cause of the accidental injury. In Phillips v. A&H Construction Co., 134 S.W.3d 145, 148 (Tenn. 2004), Johnny Phillips lost consciousness while operating an automobile on a

public highway, and the automobile he was operating struck a tractor-trailer. Phillips acknowledged that he lost consciousness due to an idiopathic condition, but he argued that his injuries resulting from the traffic accident should be compensable because the employment hazard caused or contributed to his injuries. The Tennessee Supreme Court agreed, saying:

> "Compensation is available to a worker injured as a result of an idiopathic episode if that worker can show a causal connection between the injury and some hazard incident to his or her employment. If driving a vehicle is part of an employee's job, then it is certainly a hazard incident to employment. To prove that his injuries arose out of his employment, <u>Phillips must prove that driving his vehicle caused or exacerbated his injuries, not that any condition of work caused his idiopathic loss of consciousness</u>."

134 S.W.3d at 152 (emphasis added). In reaching its conclusion, the court analyzed <u>Tapp v. Tapp</u>, 192 Tenn. 1, 236 S.W.2d 977 (1951), a case remarkably similar to the case before us, in which Lee Tapp, while driving in the course of his employment, lost consciousness due to a severe coughing fit brought on by an asthmatic condition and caused his automobile to swerve into a ditch. The Tennessee Supreme Court construed <u>Tapp</u>, which reversed a judgment denying compensation, as holding that a traffic accident arises out of the employment when the

22

hazards of the employment contribute to the accident along with the employee's idiopathic condition. See also Dubose v. City of St. Louis, 210 S.W.3d 391, 396 (Mo. Ct. App. 2006) ("[T]he fact that an idiopathic condition caused claimant to lose control of his patrol car does not prevent recovery because the evidence showed that claimant's injuries resulted from the collisions his car was involved in after it went out of control.").

Thus, the trial court did not err in concluding that, if, following the syncope episode brought on by the employee's idiopathic factors, the employment conditions contributed to the accident by increasing the risk of injury to the employee, the test for legal causation was satisfied. That principle may not have been supported by the citation to Ex parte Valdez, but that citation error did not lead the trial court to reach the wrong legal conclusion. The trial court still stated and applied the correct principle of the law of legal causation -- that the employment conditions must affirmatively contribute to the accidental injury to meet the increased-risk test.

### The Application of the Increased-Risk Test

The trial court also did not commit reversible error by failing to quote the increased-risk standard as formulated in Ex parte Trinity

Industries. In its judgment, the trial court did not verbatim state that the employee had to prove that he was exposed to a danger or risk materially in excess of that to which people not so employed are exposed ordinarily in their everyday lives. The employer argues that that omission led the trial court to misapply the increased-risk test because the trial court did not require the employee to establish that the risk of his accidental injury was greater than the risk faced by the ordinary traveler on a public road. The employer contends that, using the analysis set forth in Ex parte Trinity Industries, the trial court should have found that the employee would have faced the same or even a higher risk of injury if the employee had blacked out while driving a jeep or a motorcycle on a public highway, and, thus, it says, he was not exposed to an increased risk of injury while operating the buggy at work.

However, the increased-risk test does not require such an exacting comparison. In Ex parte Trinity Industries, the supreme court determined that a punch-press operator who suffered a totally disabling stroke while working had established legal causation because, the court said, at trial he "produced more than adequate evidence to establish that he was exposed to cardiovascular stress in the operation of his punch

24

press 'materially in excess' of the base-line level of risk to which we all are exposed <u>in merely living</u>."  680 So. 2d at 269 (emphasis added).  That excerpt illustrates that the key consideration is not whether the employee could possibly face a statistically similar risk in his ordinary, everyday life.  For example, in idiopathic-fall cases, the increased-risk test does not compare the risk of falling at work from a height versus the risk of falling from the same height while at home.  Instead, the increased-risk test compares the heightened risk of injury facing an employee due to his or her employment conditions to the risk of injury to those persons not similarly employed in the same activity or under the same circumstances.  <u>See</u> <u>Nunn v. Texaco Trading & Transp., Inc.</u>, 3 Neb. App. 101, 109, 523 N.W.2d 705, 710 (1994) ("Employing the increased risk doctrine, we also conclude that Nunn's injuries arose out of his employment, because his duties exposed him to a greater risk than that to which the public is exposed. Clearly, the consequences of blacking out behind the wheel of a truck carrying 8,000 to 10,000 gallons of oil are much more severe than the consequences of blacking out at home or while walking on the sidewalk.").

In this case, the trial court found that the risk of injury to the employee following his loss of consciousness was multiplied by the fact that he was operating a motor vehicle when he passed out. As the courts of other states have concluded, when an employee blacks out due to an idiopathic condition while operating a motor vehicle, the risk of injury is greater than if the employee was not so employed. See Marshall v. Bob Kimmel Trucking, 109 Or. App. 101, 104, 817 P.2d 1346, 1347 (1991). Thus, courts in other jurisdictions, applying the increased-risk test, have uniformly awarded compensation in these circumstances. Id. (citing 1 Arthur Larson, Workmen's Compensation Law 3-356, § 12.12 (1990)). See also Appeal of Kelly, 167 N.H. 489, 496, 114 A.3d 316, 322 (2015) ("There can be no question that the injurious effects of falling asleep were increased by the environment in which the petitioner found himself at the time he fell asleep -- behind the wheel of a moving truck."); Hill v. Faircloth Mfg. Co., 245 Mich. App. 710, 720, 630 N.W.2d 640, 646 (2001) (holding injuries from vehicular accidents caused by workers' diabetic seizures were compensable "[b]ecause the activity required by their employment placed them in a position of increased risk or aggravated their injuries, the injuries would be compensable even if an idiopathic

26

condition caused them to lose consciousness").  We find these cases to be persuasive because they align with the legal-causation analysis adopted by our supreme court and already applied in our idiopathic-fall cases.

Additionally, the trial court specifically found that the design of the buggy increased the risk that the employee would sustain injuries to his head.  The employer acknowledges that, when the employee slumped over after losing consciousness, his head hung outside of the buggy and that, after the buggy swerved, his head was exposed to the structures lining the roadway because the cab of the buggy was not enclosed. Applying Alabama law to those undisputed facts, we conclude, as did the trial court, that the employment conditions affirmatively contributed to the risk that the employee would receive the injuries he ultimately sustained in the accident.  In Virginia Tree Harvesters, Inc. v. Shelton, 62 Va. App. 524, 537, 749 S.E.2d 556, 562 (2013), the Virginia Court of Appeals held that, by requiring an employee to work on a skidder without a window, the conditions of the employment increased the risk that he would be struck by a log while operating the skidder, "as there was nothing to stop the moving logs from entering the skidder's cab."  In this

case, there was nothing to prevent the employee's head from hanging outside the cab of the buggy and being exposed to injury from a collision.

Conclusion

Based on our de novo review, we conclude that, as a matter of law, the accident befalling the employee on March 20, 2024, arose out of his employment. At worst, any errors the trial court may have committed in its judgment were harmless errors that did not lead the trial court to an improper legal conclusion. See Rule 45, Ala. R. App. P. ("No judgment may be reversed or set aside, ... unless in the opinion of the court to which the appeal is taken ..., after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."). Ultimately, the trial court reached the correct decision that the accident arose out of the employee's employment. For the foregoing reasons, the judgment is affirmed.

AFFIRMED.

Edwards, Hanson, and Fridy, JJ., concur.

Bowden, J., dissents, with opinion.

BOWDEN, Judge, dissenting.

I respectfully dissent.

MMR Constructors, Inc. ("MMR"), appeals the compensability judgment ("the judgment") of the Mobile Circuit Court ("the circuit court") in a workers' compensation case brought by one of MMR's employees, Darrell Wayne Taylor. Taylor sustained injuries in the course of his employment with MMR after he began coughing, lost consciousness, and crashed the open-air, four-wheeled "buggy" that he was driving. Taylor sued MMR, alleging, in part, that his injuries were compensable because his injuries satisfied the "increased-risk test," which we use to determine legal causation in nonaccidental-injury cases.

The circuit court agreed, finding that Taylor had satisfied the increased-risk test. The circuit court, however, did not determine that Taylor's injuries were caused by a nonaccidental injury. Furthermore, even if the increased-risk test was the appropriate standard of legal causation in this case, the circuit court appears to have misstated the increased-risk test and applied a but-for standard of legal causation. For these reasons, I respectfully dissent.

I. Whether the increased-risk test applies to all accidents in which an employee claims that his or her accident was caused

by a combination of idiopathic factors and hazardous employment conditions

A.    The "set-in-motion" and the "increased-risk" tests

The Alabama Workers' Compensation Act ("the Act"), § 25-5-1 et seq., Ala. Code 1975, provides compensation for "accidental injuries," which are injuries caused by an accident. An "accident" is "an <u>unexpected</u> or unforeseen <u>event</u>, happening <u>suddenly</u> and violently, with or without human fault, and producing at the time injury to the physical structure of the body ... by accidental means." Ala. Code 1975, § 25-5-1(7) (emphasis added). Our decisions have also interpreted the Act as providing compensation for "nonaccidental injuries," which are injuries that were not caused by an accident but have a causal link to an occupational hazard. See <u>Ex parte Trinity Indus., Inc.</u>, 680 So. 2d 262 (Ala. 1996).

The applicable standard of legal causation depends on whether the injury is an accidental injury or a nonaccidental injury. After our supreme court's decision in <u>Ex parte Patton</u>, 77 So. 3d 591 (Ala. 2011), cases that involve accidental injuries have consistently used the "definite-causal-connection" or "set-in-motion" test as the standard of legal causation. See, e.g., <u>Patrick v. Mako Lawn Care, Inc.</u>, 346 So. 3d 1001, 1003-04 (Ala. Civ. App. 2021) ("An accidental injury arises out of

30

the employment when the employment, and not some other agency, <u>sets in motion</u> the proximate cause of the injury, so that the injury may be considered a result of an employment hazard." (emphasis added; citations omitted)); <u>Winn-Dixie Montgomery, LLC v. Purser</u>, 154 So. 3d 1025, 1028 n.4 (Ala. Civ. App. 2014) ("[T]o establish legal causation in a worker's compensation action, the worker must demonstrate a causal connection between the work and the injury."); and <u>Ex parte Advantage Resourcing, Inc.</u>, 109 So. 3d 170, 174 (Ala. Civ. App. 2012) (quoting <u>Ex parte Patton</u>, 77 So. 3d at 594-95 (other citations omitted)) ("[A] claimant under the Act, in order to recover, must '"establish a <u>definite causal connection</u> between the work and the injury"' such that '"the rational mind [is] able to trace the resultant personal injury to a proximate cause <u>set in motion</u> by the employment, and not by some other agency."'" (emphasis added)).

In "nonaccidental-injury" cases, "[d]etermining whether a causal relationship has been established between the performance of the claimant's duties as an employee and the complained-of injury is especially difficult and troublesome." <u>Ex parte Trinity</u>, 680 So. 2d at 266. As a result, the court applies the "increased-risk test" to ensure that a causal connection exists between the employment and the complained-of

31

nonaccidental injury. See Ex parte Patton, 77 So. 3d at 597-98 (Murdock, J., concurring specially) (noting that the set-in-motion test and the increased-risk test are distinct legal-causation standards). This court synthesized the increased-risk test into a two-pronged standard of legal and medical causation ("the Howard standard") in City of Tuscaloosa v. Howard, 55 Ala. App. 701, 705-06, 318 So. 2d 729, 732 (Ala. Civ. App. 1975).

> "[Legal causation:] If in the performance of the duties for which he is employed an employee is exposed to a danger or risk materially in excess of that to which people not so employed are exposed, and an injury occurs, such injury may legally be determined to have arisen from his employment and be an accident under the [Act]. ... [Medical causation:] [S]uch exposure, though operating with or upon other exposure common to all, was in fact, the contributing cause of the injury."

Id. (emphasis added); cf. Ex parte Trinity, 680 So. 2d at 268 ("Howard sets out the correct causation standard for all workers' compensation claims relating to 'nonaccidental' injuries." (footnote omitted)).

Our supreme court and this court have applied the increased-risk test in cases that reflect the type of injuries, as described by Justice Murdock in his special concurrence in Ex parte Patton, 77 So. 3d at 599, that are the result of "'an act of God' or some other force not normally

32

considered as having been set in motion by the employment," including a lightning-strike injury (Ex parte Byrom, 895 So. 2d 942 (Ala. 2004)), an assault injury (City of Birmingham v. Jenkins, 328 So. 3d 889 (Ala. Civ. App. 2020)), occupational diseases (e.g., ArvinMeritor, Inc. v. Handley, 12 So. 3d 669, 683-84 (Ala. Civ. App. 2007)), and work-related cumulative trauma (e.g., Ex parte Johns & Kirksey, Inc., 121 So. 3d 1005, 1010 (Ala. Civ. App. 2013)).

Injuries like pneumonia, heart attacks, strokes, aneurysms, and diabetic comas that could be the result of idiopathic, natural causes are likewise compensable nonaccidental injuries when they have a causal connection to an occupational hazard. Ex parte Trinity, 680 So. 2d at 266-67; see, e.g., Pow v. Southern Constr. Co., 235 Ala. 580, 180 So. 288 (1938) (holding that an employee's death from pneumonia was a compensable injury because the employee was exposed in his employment to cold and wet conditions materially in excess of that to which people in the locality were exposed and his pneumonia was caused by that exposure). However, when injuries like pneumonia, heart attacks, strokes, aneurysms, or diabetic comas are caused by a sudden or unexpected external event they are analyzed as accidental injuries. See Associated Grocers of the South,

Inc. v. Goodwin, 965 So. 2d 1102, 1108 (Ala. Civ. App. 2007) ("[C]ardiac injuries are not always to be treated as 'nonaccidental' injuries; rather, a cardiac injury may properly be categorized as an 'accidental' injury in circumstances in which the injury was allegedly caused by a sudden and unexpected external event.").

    B.   The applicable standard of legal causation in this case

Taylor presented two theories of compensability at the evidentiary hearing: 1) that forklift exhaust fumes had caused or contributed to his cough on the day of the accident and 2) that, even if forklift exhaust fumes had not caused or contributed to his cough, his injuries were compensable because his employment with MMR had placed him at an increased risk of injury. See R. 12 ("There is a test that comp has developed over the years that essentially says if the employment puts the employee at an increased risk of injury, then the accident and injuries are covered."); (Id.) ("[E]ven assuming … that the environment that [Taylor] was working in did not contribute one iota to him developing a cough, under the circumstances, he's covered under [the Act]."); R. 267 ("[E]ven if under the case law the fumes did not contribute to [Taylor's coughing], there's coverage."). MMR presented the matter in a different light and argued

that the injuries should be construed as "nonaccidental." See R. 19 ("[A]t least as the comp law defines it, it's a non-accident injury ....").

There was conflicting testimony about the existence of the forklift that Taylor argued had caused or contributed to his coughing and loss of consciousness. Taylor testified that, right before he began coughing and lost consciousness, he began to smell exhaust from a forklift that had pulled out in front of him. He testified that he started coughing because of the exhaust fumes. An MMR employee who witnessed a portion of the accident testified that there was no forklift or any other type of vehicle on the road in front of Taylor when the buggy began to accelerate, veered off the road, and crashed. The witness testified that if there had been a forklift in front of Taylor, he would have hit the back of it when the buggy accelerated. Ultimately, the circuit court found that "there was no forklift" in front of Taylor.

The main opinion states that "the trial court determined that [Taylor] lost consciousness following a severe coughing spell brought on by an idiopathic condition" and concludes that the circuit court appropriately required Taylor to satisfy the increased-risk test for legal causation. ___ So. 3d at ___. In fact, the judgment appears to contradict

35

that inference -- "[a]lthough [Taylor] received treatment for bronchitis prior to the date of the accident, [he] had been returned to work on March 20, 2024, without limitations or restrictions by his physician," and "[i]t is undisputed that prior to March 20, 2024, [Taylor] had never before suffered a coughing spell that had caused him to lose consciousness." I do not read the judgment to support the conclusion that the circuit court made <u>any</u> determination regarding the cause of Taylor's coughing spell -- except that it was not caused by forklift exhaust fumes.[2]

---

[2]The main opinion suggests that because MMR has not argued that the circuit court failed to determine the cause of Taylor's coughing spell, we cannot consider this point as a ground for reversing the circuit court's judgment. I do not argue that this is a ground for reversal; I simply do not agree with the main opinion's conclusion that the circuit court found that Taylor's idiopathic condition caused his coughing spell. However, as I explain in this writing, I would reverse the judgment because the circuit court misstated the increased-risk test, which is an issue that MMR properly preserved for appellate review. Because MMR preserved the issue on which I would reverse the circuit court's judgment and because the cause of an accident determines the applicable standard of legal causation, I would also remand the cause for the circuit court to determine the cause of the accident so it can apply the correct standard.

I also acknowledge and agree that this court cannot consider arguments not preserved for review. However, I believe the main opinion is misinterpreting the issues I raise in this dissent as improperly advocating a position or argument not raised and preserved by a party. The issues I discuss are included in the dissent as rebuttal to the main opinion. Regardless, I stand by my main position articulated above, which was clearly preserved, raised, and argued by MMR.

36

Even accepting as true that the circuit court had concluded that Taylor began coughing, lost consciousness, and was injured as the result of an idiopathic condition, it is not clear to me that, as the main opinion concludes, our caselaw required him to meet the increased-risk test for legal causation because Taylor "claim[ed] that his … accident resulted from a combination of idiopathic factors and hazardous employment conditions." ___ So. 3d at ___.

The main opinion relies on Irby v. Republic Creosoting Co., 228 F.2d 195 (5th Cir. 1955), as "the clearest example of how the increased-risk test applies in the context of an accident precipitated by an idiopathic condition." ___ So. 3d at ___. The main opinion acknowledges that Irby is not binding authority, but it asserts that this court has considered it as persuasive authority.

To my knowledge, Irby -- an 80-year-old case from the United States Court of Appeals for the Fifth Circuit -- has been cited only twice by our courts: in Southern Cotton Oil Co. v. Wynn, 266 Ala. 327, 96 So. 2d 159 (1957), and in Slimfold Manufacturing Co. v. Martin, 417 So. 2d 199 (Ala. Civ. App. 1981). In Southern Cotton, the Irby decision is mentioned only in the context of determining whether "the accident [was] a proximate

contributing cause acting upon the particular individual to produce disability or death, whether directly or through disease."[3] 266 Ala. at 333, 96 So. 2d at 164. In Slimfold, this court confronted an issue of first impression regarding the compensability of unexplained falls. 417 So. 2d at 201. The Slimfold court declined to adopt the purported rule from Irby that if the cause of a fall was unexplained, the resultant injuries would be compensable as a matter of law. Id. at 202. Although the Slimfold court cited the Howard standard approvingly, this court ultimately held that "the burden is on the claimant to establish a definite causal connection between the work and the injury." Id. at 202.

Post-Patton, this court has cited Slimfold to demonstrate that, to recover for an accidental injury under the Act, a claimant must satisfy the "set-in-motion" test. See, e.g., Pollock v. Girl Scouts of Southern Alabama, Inc., 176 So. 3d 222, 227 (Ala. Civ. App. 2015) (quoting

---

[3]In reference to the injury suffered by the employee in Southern Cotton, our supreme court in Ex parte Trinity, 680 So. 2d at 267, noted that, "[c]learly, a person shoveling coal [who suffers a cerebral hemorrhage] is exposed to dangers materially in excess of the dangers to which we all face in merely living" when it held that the Howard standard is the applicable standard of legal causation for nonaccidental injuries. Thus, the court framed the injury in Southern Cotton as "nonaccidental" rather than an accidental injury resulting from an idiopathic condition.

Slimfold, 417 So. 2d at 201-02) ("'[I]n order to satisfy the "source and cause" requirement "the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment and not otherwise ...."'"; "'[T]he burden is on the claimant to establish a definite causal connection between the work and the injury.'" (emphasis added)); see also, e.g., Ex parte Advantage Resourcing, 109 So. 3d at 174 (quoting Ex parte Patton, 77 So. 3d at 594-95, quoting in turn Slimfold, 417 So. 2d at 202, and Wooten v. Roden, 260 Ala. 606, 611, 71 So. 2d 802, 806 (1954)) ("[Our] supreme court … recently reconfirmed the principle -- one which had been placed in some doubt by dicta in Ex parte Byrom, 895 So. 2d 942 (Ala. 2004) -- that a claimant under the Act, in order to recover, must '"establish a definite causal connection between the work and the injury"' such that '"the rational mind [is] able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency."'" (emphasis added)).

The main opinion also relies on opinions of other jurisdictions for the rule that, in cases involving injuries precipitated by idiopathic factors, this court must determine whether the employment conditions were a contributing cause of the accidental injury. I do not see the need

39

to reach beyond the bounds of Alabama courts for such a rule when our caselaw supports a broader proposition -- a claimant must prove that an injury caused by an accident was the result of a proximate cause set in motion by the employment and not by some other agency. See Ex parte Patton, 77 So. 3d at 594-95. To the extent that the main opinion relies on cases from other states for additional propositions of law, our supreme court has stated that "'[t]he opinions of our sister states are merely persuasive authority, and this Court is not bound by the doctrine of stare decisis to follow such decisions.'" Black Bear Sols., Inc. v. State Dep't of Educ., 330 So. 3d 840, 846 (Ala. Civ. App. 2021) (quoting Fox v. Hunt, 619 So. 2d 1364, 1367 (Ala. 1993)).

In light of the foregoing, I do not find Irby to be persuasive authority, and I do not read our caselaw to provide a separate rule for injuries caused by idiopathic conditions. It seems unnecessary to further segment our analysis by carving out a rule regarding legal causation for this type of injury. I believe that our caselaw regarding legal causation for workers' compensation claims under the Act can be accurately summarized as follows:

Injuries caused by an accident -- i.e., a sudden and unexpected external event -- and nonaccidental injuries -- i.e., injuries not caused by a sudden and unexpected external event, but by an act of God or some other force not normally considered as having been set in motion by the employment -- that arise out of and occur in the course of the employment are compensable under the Act.[4] In cases involving accidental injuries, a claimant must establish legal causation by demonstrating a definite causal connection between the injury and the employment such that the rational mind is able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency. See Ex parte Patton, 77 So. 3d at 594-95. In nonaccidental-injury cases, a claimant must satisfy the increased-risk test -- i.e., the Howard standard for legal causation -- by demonstrating that he or she was

---

[4]I acknowledge that the term "nonaccidental" is confusing, especially because the Act provides compensation for injuries or deaths "caused by an accident." Ala. Code 1975, § 25-5-51. However, this is how our supreme court has analyzed injuries under the Act, and this court's decisions "must conform to those of our supreme court so as to preserve uniformity of legal decisions." Myers v. Alfa Mut. Ins. Co., [Ms. CL-2024-0010, Oct. 18, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024), rev'd on other grounds, [Ms. SC-2024-0736, Apr. 25, 2025] ___ So. 3d ___ (Ala. 2025).

41

exposed to a danger or risk materially in excess of that to which people not so employed are exposed. See Ex parte Trinity, supra.

The circuit court's determination of the cause of the accident is crucial to the question whether it applied the correct standard of causation. It is not clear what, if anything, the circuit court determined was the cause of Taylor's cough that resulted in his injuries. I would therefore reverse the judgment and remand the cause for the circuit court to determine whether Taylor's injuries were caused by an accident or were nonaccidental in nature and to apply the applicable standard of legal causation based on its determination.

II. Whether the circuit court erred by misstating the increased-risk test and applying a but-for standard of legal causation

Even if the circuit court had clearly determined in the judgment that Taylor's injuries were nonaccidental in nature and, accordingly, required Taylor to satisfy the Howard standard for legal causation, the circuit court misstated the increased-risk test in the judgment.

In the judgment, the circuit court described the increased-risk test, in pertinent part, as follows:

"6. In determining whether an on-the-job injury arises out of the employment, the Court employs the increased risk test to determine whether the employment increases the risk

42

of the accident or injury. Ex parte Martin, 417 So. 2d 203 (Ala. 1981).

"7. The increased risk test is satisfied if the employee demonstrates that in the performance of his job he was exposed to conditions of risk or hazard that he would not have been exposed to had he not been performing his job. Gold Kist v. Pope, 539 So. 2d 291 (Ala. Civ. App. 1988).

"8. An accident arises out of the employment if the employment materially increases the risk that an accident will occur. See, e.g., Cummings Trucking Co. v. Dean, 628 So. 2d 902 (Ala. Civ. App. 1993)(accident arose out of the employment where a truck driver exposed to fumes from diesel fuel became dizzy, fell, and broke his hip).

"9. An accident also arises out of the employment if the employment increases the risk of injuries from an accident by placing the employee in a dangerous position where the consequences of an accident would be more severe than otherwise. See, e.g., Hornady Transportation, LLC v. Fluellen, 116 So. 3d 236 (Ala. Civ. App. 2012) (accident arose out of the employment where truck driver was killed when he wrecked his truck after a possible coronary event); Gold Kist v. Pope, 539 So. 2d 291 (Ala. Civ. App. 1988) (accident arose out of the employment where employee with a possible seizure disorder fell from an estimated height of eight feet while taking inventory on top pallets of feed; the Court stated that 'it would appear to this court that taking inventory on top of an eight-foot stack of feed above a concrete floor exposes the employee to a risk or hazard that he would not have been exposed to had he not been performing his job'); Irby v. Republic Creosoting Co., 228 F.2d 195 (5th Cir. 1955) (accident arose out of the employment where employee suffered a spinal cord injury when he fell three-feet from platform after an epileptic seizure; the Court stated that 'the severity of the fall and the angle and position at which [the employee] struck the ground were directly influenced['] by his fall from three feet, one of the conditions of his employment).

43

"10. Based on all of the forgoing [sic] it is this Court's determination that [Taylor]'s accident arose out of his employment because in the performance of his job he was exposed to conditions of risk or hazard that he would not have been exposed to had he not been performing his job, including but not limited to the operation of the buggy without an enclosed cabin in a commercial construction zone that caused or contributed to him fracturing his skull after losing consciousness from coughing."[5]

---

[5]The cases cited in the judgment as providing statements of law regarding the increased-risk test are questionable, at best.

Ex parte Martin is a no-opinion, per curiam decision quashing a writ of certiorari to review this court's decision in Slimfold Manufacturing Co. v. Martin, 417 So. 2d 199 (Ala. Civ. App. 1991). Simply put, the circuit court could not have relied on Ex parte Martin for any statement of law because there was no opinion.

Gold Kist concerned an employee who was injured after falling from a stack of pallets approximately eight feet tall while taking inventory. The court applied the following standard of legal causation:

"'To establish legal causation the employee must show that in the performance of [his] duties [he] was exposed to a danger or risk materially in excess of that to which people not so employed are exposed. Put another way, [he] must demonstrate that in the performance of [his] job [he] had to exert or strain [himself] or was exposed to conditions of risk or hazard and [he] would not have strained or exerted [himself] or been exposed to such conditions had [he] not been performing his job.'"

539 So. 2d at 292 (quoting Fordham v. Southern Phoenix Textiles, Inc., 387 So. 2d 204, 205 (Ala. Civ. App. 1980)) (emphasis added).

Ex parte Trinity, Inc., 680 So. 2d 242 (Ala. 1996), later reaffirmed that the Howard standard is the applicable standard of legal causation in nonaccidental-injury cases. Id. at 267. ("A claimant does not have to show any 'unusual strain or overexertion' in order to satisfy the first prong of the Howard standard. Rather, to establish 'legal causation,' one seeking redress under [the Act] for 'nonaccidental' injuries need only establish that the performance of his or her duties as an employee exposed him or her to a danger or risk materially in excess of that to which people are normally exposed in their everyday lives." (emphasis added)).

The Alabama Supreme Court in Ex parte Trinity further stated that, to establish legal causation for accidental injuries, claimants need only produce "substantial evidence tending to show that the alleged 'accident' occurred." Id. at 266 n.3. The court later clarified that note 3, which purported to abrogate the legal-causation requirement for accidental-injury cases, was dicta. Ex parte Patton, 77 So. 2d 591 (Ala. 2011). This court in Ex parte Advantage Resourcing, Inc., 109 So. 3d 170, 174 (Ala. Civ. App. 2012), subsequently cited Ex parte Patton as reaffirming the traditional "set-in-motion" causal connection test for accidental injury cases.

This court in Cummings applied a standard of review that was applicable to an earlier version of the Act to determine whether there was any legal evidence to support the trial court's finding of a causal connection between the employee's work and injury and whether a reasonable view of the evidence supported the trial court's judgment awarding benefits to the employee. Cummings did not apply the increased-risk test that the judgment attributes to it.

In Hornady, this court discussed evidentiary issues raised by the employer, whether there was sufficient evidence to support the trial court's determination of the medical cause of the employee's death, and whether the trial court erred by awarding more burial expenses than permitted under the Act. Hornady did not discuss the increased-risk test or review the standard of legal causation applied by the trial court.

45

(Emphasis added.)

Our caselaw is clear that the Howard standard of legal causation for nonaccidental injuries articulates the increased-risk test as follows: "If in the performance of the duties for which he is employed an employee is exposed to a danger or risk materially in excess of that to which people not so employed are exposed, and an injury occurs, such injury may legally be determined to have arisen from his employment and be an accident under the [Act]." 55 Ala. App. at 705, 318 So. 2d at 732. See, e.g., Jenkins, 328 So. 3d at 900 (quoting Ex parte Trinity, 680 So. 2d at 266, quoting in turn Howard, 55 Ala. App. at 705, 318 So. 2d at 732) ("To prove legal causation, a party seeking workers' compensation benefits must show that the performance of the duties of the employment exposed the employee '"to a danger or risk materially in excess of that to which people not so employed are exposed [ordinarily in their everyday lives]."'"); see also, e.g., Ex parte Johns & Kirksey, Inc., 121 So. 3d at 1010 (quoting City of Gadsden v. Scott, 61 So. 3d 296, 301 (Ala. Civ. App. 2010), quoting in turn Ex parte Trinity, 680 So. 2d at 269, quoting in turn Howard, 55

---

Irby, discussed supra, is a nonbinding decision of limited persuasive authority from the federal Fifth Circuit Court of Appeals.

Ala. App. at 705, 318 So. 2d at 732) ("'"To establish legal causation, the employee must prove that 'the performance of his or her duties exposed him or her to a danger or risk materially in excess of that to which people are normally exposed in their everyday lives.'"'").

I can find no support in our caselaw for an "increased-risk test" that merely requires a claimant to demonstrate that "he was exposed to conditions of risk or hazard that he would not have been exposed" but for his employment. A but-for standard of legal causation has been soundly rejected as antithetical to the Act's requirement that an accident "aris[e] out of … [the] employment." § 25-5-51, Ala. Code 1975; see, e.g., Ex parte Patton, 77 So. 3d at 596-97 (overruling Ex parte Byrom, supra, to the extent that it endorsed a "but-for" causation standard for accidental injuries because "[t]he utilization of a 'but-for' test negates the statutory requirement that, to be compensable, an injury or death 'arise' out of employment and instead requires only one part of the statutory test -- that the injury occur 'in the course of employment'"); see also Slimfold, 417 So. 2d at 201 (noting a "reluctance of Alabama appellate courts to accept but-for reasoning as a test of causation in [workers'] compensation actions").

47

Presumably to shoehorn the circuit court's determination of compensability into the type of comparative-risk analysis that the Howard standard demands, the main opinion states that "the trial court found that the risk of injury to [Taylor] following his loss of consciousness was multiplied by the fact that he was operating a motor vehicle when he passed out." ___ So. 3d at ___ (emphasis added). In fact, the judgment does not conclude that Taylor's risk of injury was multiplied -- or increased -- by operating the buggy; there is nothing in the judgment that suggests that the circuit court compared the risk of danger that Taylor was exposed to in his employment to the risk people not so employed are exposed to in their everyday lives. Instead, the circuit court held that Taylor was exposed to a risk that he would not have been exposed to but for his job.

The main opinion brushes this aside and holds that the circuit court "did not err in concluding that, if, following the syncope episode brought on by [Taylor's] idiopathic factors, the employment conditions contributed to the accident by increasing the risk of injury to [Taylor], the test for legal causation was satisfied." ___ So. 3d at ___. Essentially, because it believes that the result is correct, the main opinion considers

that whatever standard the circuit court used to reach its decision is immaterial.

Although I believe that our caselaw likely supports the conclusion that Taylor's injuries were the result of an accident[6] and are compensable under the Act, I cannot agree that this court can affirm the circuit court's judgment in this case simply because it believes that the judgment reached the correct conclusion. Assuming that the increased-risk test was the appropriate standard of legal causation in this case, the circuit court clearly did not perform the type of comparative-risk analysis required by the Howard standard. As a result, the circuit court failed to analyze whether Taylor was exposed to a risk of injury in his employment with MMR that was materially in excess of that to which the general public is exposed. Instead, the circuit court merely determined that Taylor was exposed to a risk that he would not have been exposed to but for his employment.

Because the circuit court misstated the increased-risk test and applied a but-for standard of legal causation, I would conclude that the

---

[6]Crashing the buggy was a sudden and unexpected external event, and the injuries for which Taylor seeks compensation were the result of that accident.

judgment is due to be reversed and the cause remanded to the circuit court to apply the correct standard of legal causation. See <u>Truss v. Georgia-Pacific Corp.</u>, 686 So. 2d 328, 330-31 (Ala. Civ. App. 1996)(reversing the judgment because the trial court applied the incorrect standard of legal causation when it required the employee to demonstrate that he "'"ha[d] to exert or strain himself or [was] <u>exposed to conditions of risk or hazard</u> and <u>he would not have</u> strained or exerted himself or <u>been exposed to such conditions had he not been performing his job</u>,"'" and remanding the cause to the trial court to apply the <u>Howard</u> standard (emphasis added; citations omitted)).

<u>Conclusion</u>

I disagree with the main opinion that Alabama law requires a claimant to satisfy the increased-risk test when he or she claims that an accident was precipitated by an idiopathic condition. Our caselaw provides that a claimant may establish the legal causation of an accidental injury -- i.e., an injury caused by a sudden and unexpected external event -- by proving a definite causal connection between the injury such that the rational mind is able to trace the injury to a proximate cause set in motion by the employment and not by some other

agency. For a nonaccidental injury -- i.e., an injury caused not by a sudden and unexpected external event, but by an act of God or some other force not normally considered as having been set in motion by the employment -- a claimant may establish the legal causation of the injury by satisfying the <u>Howard</u> standard, or the increased-risk test.

It is not clear to me that the circuit court determined whether Taylor's injuries were either accidental or nonaccidental in nature. Because the applicable standard of legal causation depends on that determination, I would reverse the judgment and remand the cause to the circuit court to make that determination and apply the applicable standard of legal causation.

Because the circuit court misstated the increased-risk test and applied a but-for standard for legal causation, I would also conclude that the judgment is due to be reversed and the cause remanded.

For the foregoing reasons, I respectfully dissent.